## JEFFERSON BANKING COMPANY *et al. v.* TRUSTEES OF MARTIN INSTITUTE *et al.*

1. Where a common right can be established by or against several in one suit, equity will determine the whole matter in one action. And where in such a case the rights of all the parties were tried in one suit and resulted in one verdict and one decree, this court will not dismiss the bill of exceptions to the overruling of a motion for new trial, the motion to dismiss being on the ground that there should have been two motions for new trial and two bills of exceptions instead of one.

2. The instrument sought to be reformed in this case is a certificate of "preferred stock," and not a "certificate of indebtedness" which creates a lien on all the property of the corporation issuing it, superior to the rights of general creditors. Nor can it, under the allegations of the petition, be reformed into a certificate of indebtedness creating a mortgage in favor of the intervenors, superior to general creditors of the corporation.

3. As a general rule, preferred stock in a corporation entitles the owner to dividends only from the income or earnings of the corporation issuing it, in preference to the owners of common stock.

4. An agreement of a corporation to create a lien in favor of preferred stockholders and to thus give them a preference over general creditors of the corporation, in the absence of statutory authority, is illegal. No such authority is alleged in the present case.

5. The court erred in overruling the demurrer to the intervention in so far as it sought to have a lien created in favor of the holders of the certificates of preferred stock, superior to the general creditors of the corporation.

FEBRUARY 13, 1917.  REHEARING DENIED FEBRUARY 24, 1917.

Equitable petition, etc.   Before Judge Brand.   Jackson superior court.   January 14, 1916.

The Jefferson Banking Company brought an equitable petition against the Jefferson Cotton Mills, to recover the amount of an unsecured promissory note amounting to $7,000, and alleged that the defendant was insolvent.   There was a prayer for a receiver to take charge of its assets; and a receiver was appointed.   The trustees of Martin Institute and the trustees of the Methodist Episcopal Church South, of Jefferson, filed their interventions, claiming that they had a first lien on all of the property of the Jefferson Cotton Mills, as well as on the income from it, superior to all other liens and debts, and should be first paid by reason of instruments executed and delivered to them (in form identical in each case, except as to name of holder and amount), a copy of one of which is as follows:

"Certificate of Preferred Stock in the Jefferson Cotton Mills, Jefferson, Jackson County, Georgia, Chartered A. D. 1899.

"This is to certify that the trustees of the Martin Institute are the owners of the two hundred and sixty shares of fully paid-up preferred stock in the Jefferson Cotton Mills.   This certificate is issued by the Jefferson Cotton Mills, and paid for and accepted by the trustees of the Martin Institute, upon the following expressed terms and conditions:

"1st.   The Cotton Mills to pay all taxes that may be collectible on this certificate.

"2nd.   This stock is sold at one hundred dollars per share, and is preferred, and no other preferred stock is to be issued by the Cotton Mills except eighty-two shares to the trustees of the funds bequeathed by the will of William D. Martin to the Society at Jefferson, Jackson County, Georgia, of the Methodist Episcopal Church South.   Provided, however, that nothing contained herein shall (nor shall any action hereafter be taken to) prevent the is-

suing of common. stock until the whole number of shares shall reach one hundred thousand dollars, as provided in the charter.

"3rd. The Jefferson Cotton Mills will pay to the holder or holders, out of the income or earnings, a cash dividend of 6% per annum, the same to be paid semi-annually, on the first day of June and the first day of December in each year at the office of the Jefferson Banking Company, of Jefferson, Ga.

"4th. And to secure the prompt payment of said dividend semi-annually, as well as the principal, the Jefferson Cotton Mills hereby binds and pledges to the holders of this certificate (and gives to them a first lien on) all its property, be real, personal, or mixed, that it now has or at any time hereafter may own, including its income, its assets, and its franchises, and all policies of insurance taken at any time on said property (and the Cotton Mills hereby contracts to keep it all at all times fully insured for the benefit of the holders of this preferred stock).

"5th. No other or further profits or dividends will be paid on this preferred stock, the holders of same waiving all rights to participate in profits, further than this 6% (which they are entitled to in any event).

"6th. The holders of this certificate of preferred stock waive all authority or right to vote or participate in the management of the affairs of said cotton mills, except a right to vote on a question of amendment of the charter of the same.

"7th. Upon failure of the said cotton mills to promptly pay the semi-annual installment of the dividend when due or within sixty days thereafter, then the whole sum, principal and interest, shall become due and collectible at the option of the holders of this certificate, who are hereby authorized, without resort to any court, to take possession of said Mills, all its property, assets, etc., either in person or by its agents appointed for that purpose, and operate the same, if they so desire, until it can be sold by them, which sale may be had within ninety days after they take possession, but not until thirty days notice in the newspaper that publishes the sheriff's sales in said county, and to be at public outcry before the court-house door, unless otherwise agreed.

"8th. The proceeds of such sale to be applied first to the payment of expenses and costs of proceedings; second, the principal and interest due on the preferred stock; third, the balance to be turned over to the Cotton Mills.

"This stock is transferable on the books of the company by the holder only, or his authorized attorney.

"In witness whereof, the President and Secretary have hereunto affixed their hands and the seal of the Company, this January 10, 1905.

"F. Roberts, Secretary.               H. W. Bell, President.

"Homer Hancock, N. P. J. C.

"I hereby acknowledge the execution of the above certificate, my signature thereto attached, in the presence of Homer Hancock. This June 11, 1914.               H. W. Bell.

"Witness: Homer Hancock, N. P. J. C.

"Jefferson, Ga., June 11, 1914. I, Homer Hancock, hereby certify that H. W. Bell acknowledged in my presence that he signed the above certificate of preferred stock on the date therein mentioned, and the same is his signature. Homer Hancock, N. P. J. C.

"State of Georgia—Jackson Superior Court.

"Filed June 12, 1914, 11 A. M. Recorded June 12, 1914, Book QQ, page 50. N. B. Lord, Clerk."

The original intervention of the intervenors alleges, in substance, that they were the legally qualified trustees of Martin Institute of Jefferson and of the Methodist Episcopal Church South of Jefferson; that on January 10, 1905, the Jefferson Cotton Mills issued certificates to the two institutions named above, for 260 and 82 shares respectively, "of fully paid-up preferred stock in the Jefferson Cotton Mills;" the certificates having been paid for and accepted by the trustees of the institutions named, upon the expressed terms and conditions therein set out; that under the certificates they have a first-mortgage lien upon all the property of the Jefferson Cotton Mills, including its assets, its franchise, and all policies of insurance; that this lien was executed upon all of the property of the mills, in order to better secure the payment of the money invested in the mills and 6% interest on the same, the same being a trust fund, and the officers and agents for the Jefferson Cotton Mills having due notice of this fact at the time of investment; that since the mills were placed in the hands of receivers and operated for the past three or four months, a profit over and above operating expenses has been accumulated, which, as intervenors understand, is shown by the report of the receivers, now in the custody of the court; that, taking as true this report and the

information they have, they are now entitled to receive from the receivers of the Jefferson Cotton Mills the 6% interest upon the moneys invested in the mills; and that the same is due and is a superior lien upon all the property as well as the income of the mills, except State and county and municipal taxes. The prayers are that their lien be declared superior to all other liens, except taxes, upon all the property of the mills; and that their right to the 6% interest upon the moneys invested in the mills be fixed and permanently established.

The interventions were amended as follows: "By striking all of paragraph two of the intervention filed by said intervenors on the 15th day of January, 1915, except the following words appearing at the end of said paragraph, to wit: 'and made a part of this intervention and marked exhibit "A,"' and by substituting in the place of the language stricken from said paragraph two the following language and allegations, to wit: 'On the 10th day of Jan., 1905, the said Jefferson Cotton Mills issued to the said Martin Institute and to said Trustees of said Martin Institute an instrument of writing in consideration of said trustees delivering and advancing to said Mills, in cash, the sum of $26,000.00. Said money belonged to said Martin Institute and said Trustees above named, as Trustees of said Martin Institute, and was delivered and advanced by said Martin Institute and said Trustees to said Mills in consideration of said instrument of writing being issued and delivered to said Martin Institute and said Trustees, a copy of which instrument of writing is hereto attached.'

"By striking the word 'certificate,' appearing in paragraph three of said intervention, and substituting in lieu thereof the following words, to wit: 'instrument of writing,' and by striking from said paragraph three the following words, to wit: 'invested and 6% interest on the same in the Jefferson Cotton Mills,' and substituting in lieu thereof the following words, to wit: 'delivered and advanced as aforesaid, and 6% interest on said money as provided for and contracted to be paid in said instrument of writing,' and by striking from said paragraph three of said intervention the following words appearing at the end of said paragraph, to wit: 'of investment,' and by substituting in lieu thereof the following words, to wit: 'said money was delivered and advanced as aforesaid, and said instrument of writing was executed as aforesaid.'

"By striking from paragraph five of said intervention the following words, to wit: 'invested in,' and substituting in lieu thereof the following words, to wit: 'delivered and advanced as aforesaid to.'

"By striking from the second prayer in said intervention the words 'invested in,' and inserting in lieu of said words the following words, to wit: 'delivered and advanced as aforesaid to,' and by striking from the third prayer in said intervention the word 'certificate' wherever the same appears, and inserting in lieu of said word 'certificate' the following words, to wit: 'said instrument of writing.'

"By adding to said intervention and pleadings the allegations and prayers hereinafter in this and other paragraphs of this amendment set forth. Said sum of $26,000.00, belonging to said intervenors and delivered and advanced by them to said Mills, was used by said Mills for the benefit of said Mills. The interest on said sum of $26,000.00 at the rate of 6% per annum, contracted in said instrument of writing to be paid by said Mills semi-annually on the first day of June and the first day of December in each year and every year after said instrument of writing was issued, has not been paid since the first day of————, 1913. Said Mills agreed to pay said interest in the third paragraph of said instrument of writing. Intervenors, who are now and who have been since said instrument of writing was first issued the holders of said instrument of writing, in the exercise of the right and option given them in the seventh paragraph of said instrument of writing, have heretofore declared and do now declare said sum of $26,000.00, and any and all interest which has accrued thereon under the terms of said instrument of writing, due, payable, and collectible; and intervenors desire that, as provided in the seventh paragraph, 'the whole sum, principal and interest, shall become due and collectible' at once." The prayers of the amendment were: "That it be adjudged and decreed by this court, that under and by virtue of said instrument of writing and the facts hereinbefore set forth, that said Jefferson Cotton Mills are indebted to intervenors in the sum of $26,000.00, besides interest on said sum at the rate of 6% per annum from————day of————1913, and that to secure the payment of said $26,000.00 and all interest thereon said instrument of writing is a lien or mortgage, and in-

tervenors have by virtue of said instrument of writing a lien or mortgage on said income or profits in the hands of said receivers and on said real estate and all improvements thereon and on any and all other property of said Jefferson Cotton Mills, and that said lien or mortgage on said income, real estate, and all other property of said Mills in the hands of said receivers or elsewhere is superior to any and all other claims or liens or rights of any and all other person or persons on said income or real estate or other property; that it be adjudged and decreed by this court that any and all cash now in the hands of said receivers, arising from income or profits made in operating said Mills or from any other source (except such amount as may be necessary to be retained by said receivers to pay court costs and expenses of said receivership), be paid to intervenors, to be applied to the payment of said interest and said principal sum of $26,000.00 and reasonable attorney's fees incurred by said intervenors in this proceeding; that it be decreed and adjudged by this court that any and all property of said Mills in the hands of said receivers or elsewhere be sold, and that intervenors under and by virtue of said instrument of writing have a lien on the proceeds of said sale, superior to any and all other claims or liens of any nature whatever, and that the proceeds of said sale be applied to the payment of said interest and said principal sum of $26,000.00 delivered and advanced by intervenors to said Mills as aforesaid, and reasonable attorney's fees incurred by intervenors by reason of having employed attorneys in this case; that it be decreed and adjudged by this court that intervenors, under and by virtue of the power given them in said instrument of writing, have the right to take possession of any and all of said property of said Mills in the hands of said receivers or elsewhere, and that said receivers be required to deliver to said intervenors any and all of said property, and that said intervenors be allowed and be given the right, under and by virtue of the power given them in said instrument of writing, to operate the property of said Mills until said property belonging to said Mills is sold, and that intervenors have the right and power to sell any and all of said property under and by virtue of the power given them in the said instrument of writing."

A demurrer to the interventions was overruled. To this ruling, and to the refusal of a new trial after verdict, exceptions were taken.

*J. A. B. Mahaffey* and *John J. & Roy M. Strickland,* for plaintiff.    *P. Cooley, S. J. Nix, Horace M. Holden,* and *Shackelford & Meadow,* contra.

HILL, J.    (After stating the foregoing facts.)

1.    On the call of the case in this court the defendants in error made a motion to dismiss the bill of exceptions, upon a number of grounds.    They insist that the plaintiffs in error, claiming to be creditors of the Jefferson Cotton Mills, filed an answer to the interventions of the Martin Institute and the Methodist Church, and that the interventions and answers thereto made two separate and distinct cases before the court.    Only one verdict was rendered and one decree taken in the case.    One motion for new trial was made and one brief of evidence was filed and approved.    One bill of exceptions to the order of the court overruling the motion for new trial was made.    One bill of exceptions pendente lite to the order overruling the demurrer to each intervention was taken.    It is insisted that there were two cases being tried, and that there should have been two motions for new trial, two briefs of the evidence, two bills of exceptions, and two bills of exceptions pendente lite, and that there are not sufficient parties defendant, etc.    There is no merit in the motion to dismiss.    It is true that generally all parties interested in the litigation should be made parties to proceedings for equitable relief.    Civil Code (1910), § 5417.    But, "where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action."    Civil Code, § 5419.    And see *Benson* v. *Shines,* 107 *Ga.* 406 (33 S. E. 439) ; Civil Code, § 4600.    There was but one main issue in the case, namely, whether the certificates of stock were "preferred stock," or were "certificates of indebtedness" creating a lien on all the defendant's property as against creditors who were parties. The agreement of the parties on the trial was in part as follows : "That the judge direct a verdict as he may determine the verdict should be under the law and evidence."    One verdict was rendered and one decree taken, and we think it was sufficient that one motion for new trial, one brief of evidence, and one bill of exceptions should have been filed.    Two motions would have been permissible, but were not necessary.    The court below did right in refusing to dismiss the motion for new trial, and we likewise refuse to dismiss the bill of exceptions.

2-4. The Jefferson Banking Company brought an equitable petition against the Jefferson Cotton Mills, to recover the amount due on an unsecured promissory note, and alleged that the defendant was insolvent. A receiver to take charge of the assets of the defendant was prayed for, and one was appointed. The trustees of the Martin Institute and the trustees of the Methodist Episcopal Church South, of Jefferson, both filed interventions, alleging that they had a first lien on all of the property of the Jefferson Cotton Mills, as well as on its income, superior to all other liens and debts of creditors of the corporation, and prayed that they be first paid by reason of the lien created by the alleged "certificate of indebtedness," as they denominate the instrument, a copy of which is set out in the statement of facts. These interventions were allowed by the court. And all other creditors of the corporation, so far as known, were made parties to the suit. All the creditors who were parties demurred to the interventions, on various grounds. The demurrer was overruled by the court, and the creditors excepted pendente lite. The case went to trial; but in our view we need proceed no further than to a consideration of the exceptions to the overruling of the demurrer, one ground of which is that the interventions as amended show on their face that the respective intervenors were only "preferred stockholders," and not creditors of the cotton mills. Another ground is that the proceeding on the part of the intervenors is an effort to change all the terms of the written contract by parol evidence, without alleging that there was any fraud, accident, or mistake in the execution of the contract, etc., and that where they undertake to allege mistake they do not allege how it occurred or in what way the mistake was made. The certificates issued to the intervenors are both alike, except as to names and amounts, and both will be treated as one. The main question in the case is whether the instrument of writing which is the basis of the interventions is "preferred stock," as it purports to be by its terms; or whether it is a "certificate of indebtedness," creating a lien on all the property of the cotton mills, superior to all other liens and the claims of all general creditors of the corporation. The certificate by its terms recites that the school trustees "are the owners of 260 shares of fully paid-up preferred stock in the Jefferson Cotton Mills." It further recites that "this stock is sold at one hundred dollars per share, and is

preferred," etc.   It provides for the payment to the holder, out of the income or earnings, of a cash *dividend* of 6% per annum, and "to secure the payment of said *dividend* semi-annually, as well as the principal," the Jefferson Cotton Mills binds and pledges to the holders of the certificates "and gives to them a first lien on all its property, be [it] real, personal, or mixed, that it now has or may at any time hereafter own," etc.   It also provides that no preferred stock shall be issued except that issued to the intervenors.   The right to vote or to participate in the management of the cotton mills is waived, "except a right to vote on a question of amendment of the charter of the same."   "This stock is transferable on the books of the company by the holder only, or his authorized attorney."   Throughout the certificate it is denominated as "preferred stock," and it is significant that when the interventions were first filed the intervenors evidently thought they *owned* preferred stock; for the petition alleged that they owned "fully paid-up preferred stock" in the mills, and that under the certificates they had a first-mortgage lien upon "all the property of the Jefferson Cotton Mills," etc.   It was only when the interventions were amended that the word "stock" wherever it occurred in the petition was stricken, and the words "instrument of writing" were substituted therefor, in an effort to reform the contract from a certificate of preferred stock into a mortgage indebtedness.   But we do not think the instrument, which is clearly on its face a certificate of stock, can, under the allegations of the petition, be so reformed as to make it a mortgage.   Indeed to do so would be, not to reform it as a mortgage, but to create a mortgage debt for the parties, which this court can not do.   It may be that the trustees of the church and school thought, at the time of the execution of the contract and subsequently, that the certificate of preferred stock created in their favor a lien upon the property and assets of the corporation, superior to the claims of the corporation's creditors; but if they were misled into so thinking, it is their misfortune.   They chose their present position by their own voluntary contract which they entered into a number of years before this suit was brought, and presumably they have accepted the dividends on the stock from the corporation each year since and until its failure to meet its obligations.   The powers of a corporation are fixed by law.   It may, under proper legal authority and in the

proper form, create an indebtedness. It may, under authorized powers and limitations, issue bonds and secure their payment by liens created on its property, such liens being properly executed and recorded. It may issue common and preferred stock to its stockholders and issue certificates therefor; and when such certificates are properly issued, the owner and holder becomes a shareholder of the capital stock of the corporation, subject to the laws operating on such corporation and stock. But the issuance of such certificates does not of itself create an indebtedness against the corporation, nor make the stockholder a creditor. He is instead a joint owner of the corporation, and as such, in some jurisdictions, is liable to creditors of the corporation for the amount of his stock and for additional amounts which may be fixed by statute. But, in the absence of statutory authority, such certificates of stock can not become a lien upon the assets of the corporation, in preference to creditors of the corporation, as will be seen later in this opinion. We know of no such authority conferred by law on the corporation in the instant case. In the absence of statutory authority to make this preferred stock a lien on the assets of the corporation, we do not see how the equitable lien sought to be worked out by the intervenors can be made to operate against bona fide creditors of the corporation.

It follows from what has been said that the intervenors are not lien creditors in preferment to creditors of the corporation, as claimed by them, but they are merely preferred stockholders. The case of *Savannah Real Estate &c. Co.* v. *Silverberg*, 108 *Ga.* 281, 289 (33 S. E. 908), is relied on by the defendants in error; but the facts on which that decision rests are different from those in the present case. In the *Silverberg* case it was held that the instrument sued on was an evidence of indebtedness, and not a certificate of preferred stock. That case was decided upon its own peculiar facts. It was a suit by the holder of the certificate against the maker, and did not involve the question whether the corporation could create a lien in favor of other stockholders as against creditors. Mr. Justice Cobb, in delivering the opinion of the court, said: "The stipulation that the entire issue shall be 're-tired' on January 1st, 1897, and that the company may 'retire the same or any part thereof at any time after two years from date,' upon giving notice of the character therein provided for, are stip-

ulations indicating an intention to make a contract under which one party was to receive the money for use in its business and return the same in any event at a designated time, and earlier if desired, paying to the person whose money was thus used as interest thereon a certain proportion of the earnings made by the borrower in a given enterprise; the amount of interest thus to be paid for the loan of the money depending upon the success of the enterprise in which the borrower was to use the money." It was also said in that case that "the question of whether the holder of a certificate issued by a corporation, or whether the certificate is simply evidence of a debt due by the corporation to the holder, is one that depends upon the peculiar facts of each case," etc. See, in this connection, *Coggeshall* v. *Georgia Land &c. Co.*, 14 *Ga. App.* 637 (82 S. E. 156). The case of *Totten* v. *Tison*, 54 *Ga.* 139, was also decided upon its own peculiar facts, which were different from those of the present case. It is true, as said by Mr. Justice Lewis in *Cook* v. *Equitable B. & L. Asso.*, 104 *Ga.* 814, 828 (30 S. E. 911), "It matters not what name is given to its obligation, whether stock, note, or bond; the nature of the transaction, whether it be a pure borrowing of money or not, is determined by the real substance and effect of the contract between the parties." But, as pointed out above, the nature of the transaction in the instant case, as shown by the petition including the certificate itself, shows the instrument declared upon to be preferred stock, and not an evidence of indebtedness. Under the terms of the instrument, which is in the form of a certificate of stock, no time is fixed when the principal debt shall become due and payable; and unless this be done, it can not even create a debt. 13 Cyc. 393; Saleno *v.* Neosho, 27 L. R. A. 769-772 (127 Mo. 627, 30 S. W. 190, 48 Am. St. R. 653). The contract as written could go on indefinitely or until default in the payment of dividends. The holders of the certificates could not demand payment until default in the payment of dividends. There is no provision in the contract for paying off the intervenors and for the cancellation of the debt, if it was one, at any time. It does provide for the *dividend* to be paid semi-annually out of the "income or earnings" of the corporation. These facts and others patent upon the face of the instrument itself differentiate it from those cases where the instruments of writing were held to create debts.

As we construe the instrument to be preferred stock and not a mortgage indebtedness, it is unnecessary to decide whether the description of the property alleged to be mortgaged is void for uncertainty. Nor is it necessary to enter into a discussion of the question raised as to whether the certificates were voidable at the time of issuance but were ratified by the subsequent acts of the corporation. We are treating the certificates, on demurrer, as valid and binding. Construing, therefore, the certificates to be "preferred stock," let us inquire whether they create a debt against the corporation and a lien on all its property, superior to the claims of creditors of the corporation. In Cook on Corporations (7th ed.), § 267, it is said: "By preferred stock is to be understood stock which entitles the holder to receive dividends from the earnings of the company before the common stock is paid a dividend from such earnings. In other words, it is stock entitled to dividends from the income or earnings of the corporation, before any other dividend is paid. The relation of debtor and creditor does not exist between the preferred stockholders and the corporation, and the right to a preferred or guaranteed dividend is not a debt until the dividend is declared. A dividend is money paid out of profits by a corporation to its stockholders. A preferred dividend is nothing more than that which is paid to one class of stockholders in priority to that to be paid to another class." The same author says, in section 271 of the same volume: "Formerly it was a matter of doubt and discussion whether or not a preferred stockholder had any rights as a creditor of the company, or was confined to his rights as a stockholder. The law is now clearly settled that a preferred stockholder is not a corporate creditor. . . A contract that dividends shall be paid on the preferred stock whether any profits are made or not would be contrary to public policy and void. An agreement to pay dividends absolutely and at all events from the profits when there are any, and from the capital when there are not, is an undertaking which is contrary to law, and is void. Public policy condemns with emphasis any such undertaking on the part of a corporation as to its preferred or guaranteed stock. . . An agreement of a corporation to pay the preferred stockholders before corporate creditors are paid is void. . . Occasionally a mortgage is given by the corporation to secure the payment of dividends on preferred stock,

and to give it a preference in payment over subsequent debts of the corporation upon insolvency or dissolution. It is difficult to see how such a mortgage would be legal, unless it has been issued under express statutory authority. The courts have no power to give stockholders a preference over creditors, even though the preferred stock by its terms be a lien on the property." In 10 Cyc. 370 (b), it is said: "The power to issue preferred shares does not include the power to make such shares a lien upon its property; the true conception of preferred shares being that they merely create a preference in the declaration and payment of dividends out of the income. For the creation of a lien upon the property of the corporation in favor of any one class of its shares there must be a direct statutory authorization," etc. And to the same effect, see: 3 Thomp. Corp. (2d ed.) § 2262; 3 Words and Phrases (2d Series), 1136; Continental Trust Co. v. Toledo &c. R. Co., 72 Fed. 92; Warren v. King, 108 U. S. 389 (2 Sup. Ct. 789, 27 L. ed. 760).

5. Having construed the instrument sued on in this case to be a certificate of preferred stock, and holding that it can not by being reformed, or of itself, make the owner and holder of the certificate a corporate creditor with a lien on all the property of the corporation, superior to general corporate creditors, even if the stockholders intended to do so, in the absence of statutory authority, the trial judge erred in not sustaining the demurrer and dismissing the interventions in so far as they sought to have a lien created in favor of the holders of preferred stock, superior to general creditors of the corporation. See Warren v. King, supra.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*