## JEWEL TEA CO., Inc., v. UNITED STATES.

### No. 190.

Circuit Court of Appeals, Second Circuit.

June 7, 1937.

Sage, Gray, Todd & Sims, of New York City, and Charles D. Hamel and John Enrietto, both of Washington, D. C. (Alan E. Gray and C. F. Rothenburg, both of Washington, D. C., of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U. S. Atty..

of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the defendant in an action under the Tucker Act (24 Stat. 505) to recover income taxes, erroneously collected. The question is whether the plaintiff was right, under section 23 (f) of the Revenue Act of 1928, (26 U.S.C.A. § 23 (f) and note), in deducting in the year 1929 the premiums paid by it upon the redemption of what remained outstanding of its preferred shares. These had been issued—to a par value of $4,000,-000—for cash and property, under an agreement which provided that the company should each year acquire $120,000 of them "out of the surplus profits of the Company, if sufficient, after all cumulated and defaulted dividends (if any) upon said Preferred Stock shall have been paid, or set apart." This was to be accomplished either by redeeming them at $125 or by buying in the market at no more than that price. This provision was cumulative; that is to say, if the profits were not enough in one year, the deficit should be made up whenever they became so. The company might also redeem the whole or any part of the issue at its pleasure at the same price. It must accumulate an earned surplus of $500,000 above all obligations before paying any dividend on the common shares, and of one million dollars before paying more than six per cent. "Upon any dissolution, liquidation, merger or consolidation, * * * whether voluntary or involuntary (except in the event of insolvency or bankruptcy), or upon any distribution of capital" the preferred shareholders were to receive $125 for each share and all past dividends. "In the event of any dissolution or liquidation * * * by reason of its insolvency or bankruptcy," they should be preferred as to past dividends, and receive the par of their shares. They were to have no right to vote until two quarterly payments of dividends were in arrears, when the sole voting power, though only to elect directors or to change the by-laws, went to them until the arrears were paid. The case involves the premiums paid by the company upon the purchase in the market of 5,381 shares between July 15, 1929 and February 12, 1929, and upon the voluntary redemption of the whole remainder of the issue, 20,219 shares, on April first of that year. No question is made as to the purchase of that part of the 5,381 shares bought before January 1, 1929.

United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, decided that if a company bought in its bonds at a discount, a taxable gain emerged; the theory being, as we understand it, that thereupon the borrowed money became pro tanto a profit by the cancellation of the debt which had theretofore offset it. (Art. 68 (1) (c) Regulations 74.) Conversely, if the company buys or retires its bonds at a premium, the premium is "a deductible expense." (Art. 68 (1) (b).) Obviously it can only be a loss under section 23 (f), (26 U.S.C.A. § 23 (f) and note), Article 68 (1) (a) of the same regulations provides that no gain or loss shall result from the issuance of shares, or from their purchase or sale, but it does not deal with their redemption. When a number of persons unite to contribute to a common enterprise, whether by lending money, or by taking shares of any sort, in one sense they all become co-adventurers; both lenders and shareholders can look only to the success of the venture for payment. If the shareholders also set up priorities between themselves, there results a hierarchy in which the lenders are merely the prior group; the preferred shareholders, like them, are limited in their return, and any eventual profit goes to the common shares. Thus it would be possible to treat preferred shares like debts; that is, as constituting merely a claim upon the company—the common shareholders. Such a view would make the common shareholders alone the company, since they alone share profits and manage the enterprise; it would treat all others as separate groups with whom they deal as third parties. It would have been an entirely logical and reasonable theory and the law might well have insisted upon it. It has not; on the contrary it has always distinguished between creditors and preferred shareholders, regarding the first as outside the corporate aggregation, and the second as embarked as owners along with the common shareholders. But it is an altogether conventional conception, and while in taxation it must be treated as real, the test cannot be merely the name given to the security. In re Fechheimer-Fishel

Co., 212 F. 357 (C.C.A.2). Conceivably there may be preferred shares going by the name of bonds, and bonds going by the name of preferred shares. It is not always easy to tell which are which, for securities can take many forms, and it is hazardous to try to find moulds into which all arrangements can certainly be poured. But we may say that at least those are not creditors, who cannot withdraw from the venture without the consent of the rest, demanding a fixed sum at some period set in advance. In Commissioner v. O. P. P. Holding Corporation (C.C.A.) 76 F.(2d) 11, the taxpayer had been allowed a deduction arising from the purchase of what went by the name of debenture bonds. These were subordinate to the claims of all other creditors, and interest upon them could be suspended by the company, as is commonly the case, though it was then cumulated. On the other hand they were prior, both as to principal and interest to the shareholders, preferred or common, and if there had been nothing more, we might have treated them as shares. But they contained a provision which made them payable at a fixed time, when their holders could demand their money, whether the venture was successful or not. That we thought kept them bonds, as they were called, and the deduction could be "recognized." Arthur R. Jones Syndicate v. Commissioner, 23 F.(2d) 833 (C.C.A.7); Commissioner v. Proctor Shop, Inc., 82 F.(2d) 792 (C.C.A.9).

The taxpayer at bar does not, we understand, dispute our ruling; it professes to comply with the requirement. As to the shares called, as required by the charter, it says that, although it could not be told in advance which holders would be selected, those which were, could insist upon payment. Possibly the argument might prevail, had not the obligation been dependent upon the accumulation of profits. It was; the company need not redeem any shares unless there was a surplus and only to the extent of that surplus. Thus there was no time fixed when the holders could demand their money; they were at the mercy of the company's fortunes and payment was merely a way of distributing profits. The case is even plainer as to those shares which the company redeemed at its pleasure—much the greater part here at issue. The hold-ers had no power to demand redemption except as the company chose to eliminate them from the enterprise. It was of no consequence that as a condition of doing so, it must pay them a bonus of $25; that was merely a way of commuting any future profits they might get if they were allowed to continue. The same is true as to the priority of the preferred shares, if the company, while solvent, was merged, dissolved or liquidated. This lay in the power of the common shareholders, for although the provision which we quoted at the outset put the voting power in the hands of the preferred shares upon two quarterly defaults in dividends, that power only extended to the election of directors and amendments of the by-laws. That would not enable the preferred shares to wind up the business by merger or the like. Sections 86 and 105 of the New York Stock Corporation Law (Consol.Laws N.Y. c. 59) require for merger or dissolution the vote of two-thirds of all shareholders entitled to vote, and section 51 confers voting power on all shareholders whom the charter does not exclude. The limited power given by this company's charter would not be enough, even supposing that full voting rights would in any event serve, which we do not suggest. Possibly Commissioner v. O. P. P. Holding Corporation, supra, 76 F.(2d) 11, does not commit us to the doctrine that shares must under all circumstances be debts when they contain a provision that the holder may unconditionally demand his money at a fixed time. Courts have differed as to that. At times they have gone to lengths to construe such a power as limited to a surplus. Hazel Atlas Glass Co. v. Van Dyk & Reeves, 8 F.(2d) 716 (C.C.A.2). At times they have thought such an agreement unlawful under local law; or, even if lawful, not of itself enough to make the shareholder a creditor. Fidelity Savings & Loan Association v. Burnet, 62 App.D.C. 131, 65 F.(2d) 477; In re Culbertson's, 54 F.(2d) 753 (C.C.A.9); Kentucky River Coal Corporation v. Lucas (D.C.) 51 F.(2d) 586; Id., 63 F.(2d) 1007 (C.C.A.6). All we now decide is that in the absence of such a provision the security cannot be a debt.

Judgment affirmed.