## UNITED STATES v. SOUTH GEORGIA RY. CO.
### No. 9180.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1939.

J. Leonard Lyons and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and T. Hoyt Davis, U.

S. Atty., and T. Reese Watkins, Asst. U. S. Atty., both of Macon, Ga., for the United States.

Russell Snow, of Cocoa, Fla., and Geo. R. Lilly, of Quitman, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought to recover sums paid as income taxes for the calendar years, 1933-34, the claim of the suit was that payments made in those years, as dividends, to persons holding preferred stock certificates were in fact, payments of interest, and deductible as such. The District Judge agreeing with the claim, gave the tax payer judgment. The United States, here to complain of the judgment, insists; that paid as dividends, they were in fact and in law dividends; that the taxes were rightly collected; and that the ruling requiring their refund was wrong. A copy of one of the certificates, the resolution authorizing their issuance and what has been done, since their issuance, with and in regard to them, appears in the evidence without contradiction or dispute. The case then is not one for the weighing of evidence, and the resolution of testimonial differences, and in which therefore, we must take the facts as the District Judge has found them, but one for the determination by us of the legal effect of the facts as the record presents them, clearly, simply and without controversy.

The payments in question were made on account of certificates,[1] known and des-

[1] In form as follows:

"This is to certify that ———— is the owner of ———— shares of the fully paid and non-assessable preferred stock of The South Georgia Railway Company, of the par value of One Hundred Dollars each, transferable on the books of the Company by the holder thereof in person, or by his duly authorized attorney upon the surrender of this certificate properly endorsed. The number of shares of capital stock authorized to be issued by this corporation is 7,500 of which 2,500 of the par value of One Hundred Dollars each are preferred stock, and 5,000 of the par value of One Hundred Dollars each are common stock. Said preferred stock shall be cumulative and shall bear interest at the rate of seven per cent per annum, payable on the 1st day of January and the 1st day of July of each year. Said preferred stock shall be of the par value of One Hundred Dollars per share; said preferred stock shall not be entitled to any dividends from the profits of said corporation other than the above mentioned seven per cent per annum; the holders of said preferred stock shall not have the right to vote at stockholders' meetings, but shall at all times have the right to attend stockholders' meetings and inquire into and be informed as to the affairs of said corporation.

"After five years from the issuance of said preferred stock, said corporation shall have the right at any time upon giving thirty days' written notice to the holders of said preferred stock and if the address is unknown, by giving notice by publication in the paper in which the Sheriff's advertisements are published in Quitman, Brooks County, Georgia, for four successive issues, thereof, to liqui-

ignated as preferred stock, which had been issued by the company in 1922, pursuant to a financing plan, authorized by resolution of the stockholders of date, August 11, 1922. As shown by the testimony of appellee's auditor and treasurer and by the terms of the resolution itself, this plan contemplated and provided for, a complete rearrangement of the capital and financial structure of appellee company. Reciting the authorized common stock of the company as $500,000, its issued stock as $58,000; that it had purchased the West Coast Railway for Two Hundred Five Thousand Five Hundred Dollars, to be paid for in shares of common stock in the South Georgia Railway Co., of that value; and that there was an outstanding indebtedness of $199,000 evidenced by first mortgage 5% Gold Bonds, which would mature and must be taken care of by January 21, 1933; it was resolved that in order to effect the purchase, the company issue, not less than $500,000 of common stock, and such amount in excess thereof, as the directors may deem necessary and advisable, not to exceed $1,000,000; and that for the purpose of paying the bonded indebtedness, the company issue and sell preferred stock not to exceed $250,000.

The resolution further set out the terms and conditions of the certificates and the rights and obligations of company and holder under them, each of which with one highly significant omission,[2] were faithfully carried into the certificate itself. From the date of its issue in 1922, until in November 1935, the payments to the preferred stockholders were reported in the income tax returns, of both appellee and its preferred stockholders, as dividends and not as interest, and no contention otherwise was made. In that year there was correspondence with the Interstate Commerce Commission over a complaint of the Director that the dividends had been paid upon both preferred and common stock for the years 1933 and 1934, though there was in both years an accumulated deficit existing. As to this claim, it appears from the testimony and correspondence of Cater, appellee's auditor and treasurer that though there was an accumulated deficit carried over from past years, the company in each of those years, made an operating profit of more than the amount of the dividends on both pre-

date or retire all or any part of said preferred stock by payment of the par value thereof, together with any accrued dividends which might be due and payable prior to the date of said retirement; said preferred stock shall be transferable only on the books of the Company by the holders thereof in person or by their agents or attorneys upon the surrender of said stock certificate. If said corporation shall fail to pay any accrued dividends on said preferred stock which shall mature, for a period of six months after maturity thereof, then and in that event the holders of two-thirds in value of said preferred stock shall have the right to apply to the Superior Court of Brooks County for the appointment of a Receiver to take charge of the assets of said corporation and to operate the same, and if necessary for the payment of said preferred stock, and accrued dividends thereon, to sell the properties of said corporation at public outcry and apply the proceeds of said sale according to priorities fixed by law.

"Whenever and as often as any such dividends on the preferred stock shall have accrued and remain unpaid, no dividend shall be paid to the holders of common stock of said corporation. And in the event of any liquidation, dissolution or winding up of said corporation, the holders of said preferred stock shall be paid the par value of their shares and all accrued dividends thereon, before any payment or distribution shall be made to the holders of common stock. Said corporation shall not have the right, as long as any of said preferred stock shall remain outstanding, except by consent of two-thirds of the holders of said preferred stock, to create a lien on the assets of said corporation or issue any stock having rights superior to or equal with said preferred stock.

"In witness whereof, The South Georgia Railway Company has caused its corporate seal to be affixed by its duly authorized officers, at Quitman, Ga., and dated ———— day of ————."

2 "That said preferred stock shall constitute a lien on the assets of said corporation insofar as is permissible by law to the extent of the face value of said stock and the above mentioned annual cumulative dividends, which lien shall be, insofar as is allowed by law, superior in dignity and prior to all other liens of whatever kind or character, both while said corporation is a going concern and in the distribution of the assets of said corporation."

ferred and common stock, and that he had insisted that the dividends for those years were actually paid not out of capital, but out of earnings.

Cater further testified; that the payments on the preferred stock had been made regularly when due, each year, ever since the securities were issued, without regard to whether there had been earnings within the year sufficient to pay them; that the accumulated deficit of the company had arisen in part from payment of these dividends; that some of these certificates had been retired at a discount; and that the amount of the discount had been shown in his income.

Appellee prevailed below on the contention that these facts, added together, show that though called preferred stock, the certificates evidence not an ownership in, but a claim as creditor against the company; and that the semi-annual payments made pursuant to their terms, represented interest on an indebtedness payable at all events, and not dividends, payable to the stockholder out of the company's earnings. Appellant agrees with appellee that if the certificates established not a stockholding but a creditor relationship, the payments in question, however called, would in law and in fact, be payments of interest and not of dividends. It vigorously insists however, that construed on their face and especially in connection with the circumstances of their issue and treatment since, the certificates represent not a claim against, but an interest as owner in the corporation.

We agree with appellant. Any importance that might be otherwise attached to the fact that the certificate in one sentence declares that the preferred stock "shall bear interest", is completely dissipated by the consideration that, in the next sentence and continuously to-wit, five times thereafter, these payments are referred to as dividends rather than interest, and the further controlling fact that no provision is made for the maturity of the principal sum of the certificate, nor for the collection by suit as a debt of the semi-annual payments. The certificates contain provisions usual in preferred certificates for cumulating the dividends and for giving the preferred share holders the right to take measures to protect their rights as holders of preferred stock, extending to causing the appointment of a receiver for, and if necessary, liquidating the company.

There is, thus, an entire absence here of the most significant, if not the essential feature of a debtor and creditor as opposed to a stockholder relationship, the existence of a fixed maturity for the principal sum with the right to force payment of the sum as a debt in the event of default. Jewel Tea Co. v. United States, 2 Cir., 90 F.2d 451, 112 A.L.R. 182; Commissioner of Internal Revenue v. O. P. P. Holding Corporation, 2 Cir., 76 F.2d 11; Jefferson Banking Co. v. Trustees of Martin Institute, 146 Ga. 383, 91 S.E. 463; Commissioner of Internal Revenue v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792. It therefore appears plain, we think, upon the face of the certificates that the holders are along with the common stock holders, owners of the company, with certain preferences and rights as between them and the common stockholders, not at all unusual in such certificates, and in no manner inconsistent with their relation as preferred stockholders. Further, we think it clear, that if resort be had to the circumstances surrounding the issuance of the certificates, and their handling and treatment since their issue, it will even more plainly appear that they were intended to be and are evidences not of debt but of company ownership.

Appellee points in support of its position, that the certificates are mere debts, to the fact that they were issued to retire bonds and insists that, issued to retire debts, they are debts. It points too, to the fact that the semi-annual payments the certificates call for, have been made each year without fail, just as interest on debts would be, and that in some of the years these payments were made not out of earnings, but as debts would be, if there were no earnings, out of the corpus of the property. But of far more significance, indeed overwhelming in their force, are the facts upon which appellant relies, that these certificates were issued as a part of a general rearrangement of the capital setup of the company, and for the purpose of paying off and discharging in stock, obligations which had been incurred as debts. To accomplish this purpose common stock was issued to pay the purchase debt of Two Hundred Five Thousand Dollars for the West Coast Railway Company, preferred stock was issued to pay off the bonded debt. Thus the stockholders gave effect to the dominant purpose of the refinancing, to substitute stock lia-

bilities for liabilities existing as debts. In addition to these facts, and of the most vital significance, is this sentence and resolution, "That said preferred stock shall constitute a lien on the assets of said corporation insofar as is permissible by law to the extent of the face value of said stock and the above mentioned annual cumulative dividends, which lien shall be, insofar as is allowed by law, superior in dignity and prior to all other liens of whatever kind or character, both while said corporation is a going concern and in the distribution of the assets of said corporation." This sentence left out of the certificate, evidently because it was ascertained that the laws of Georgia did not permit stockholders interests to be secured by lien on the company property, Jefferson Banking Co. v. Trustees of Martin Institute, 146 Ga. 383, 91 S.E. 463, evidences in the plainest kind of way what the company was endeavoring to do if it could, to create a preferred stock and give it a lien. Had the intention been to create a debt, there would have been no occasion for this sentence in the resolution, for the stockholders well knew that they could secure their debts by liens. Indeed, the whole purpose to be served was to issue stocks to take up lien bonds. When they placed this sentence in the resolution, they made it as plain as words could do it, that they were intending to issue stock, not incur a debt, the stock to have a lien, if under the law, a stockholding interest could be accorded a lien. Every act of the company afterwards was consistent with this view. Taught by Jefferson Banking Co., supra, that the laws of Georgia prohibited their securing the stock by a lien, all mention of a lien was left out of the certificates. As each dividend was paid, it was paid as and carried to, dividend account, and for thirteen years no claim was made that the payments were of interest. More than that, when the Commission by correspondence challenged the payment of the dividends, in 1933-34, no attempt was made to justify their payment on the ground that they were interest, but on the contrary, they were justified by the auditor and treasurer on the ground that, though there was an accumulated deficit, there were earnings in the years in question, sufficient to pay the dividend on both common and preferred stock. The apparent deficit in 1934, was explained by pointing out, that only one of the dividends had been paid in 1933, and three in 1934, whereas if they had been properly allocated and paid, two in each year, there would have been ample earnings in each year to pay them. It thus appears, that appellee's claims, that the payment of these dividends, year in and year out, whether there were earnings or not, is evidence of the fact that the company regarded them, not as dividends, but as interest on a debt, is without foundation, for the person who paid them gives an entirely different explanation. That explanation is that being cumulative, he thought it was all right to pay them in each year whether he had earned the money in that year or not, and in the years in question, he did pay them, as dividends, out of the earnings for that year. The cases appellant and appellee cite are not in conflict. They all agree that the question for decision in each case is, not what the payments are called, but what in fact, they are, and that if taken as a whole, the evidence shows a relation of debtor and creditor, the payments made on account of that relation, will be interest, no matter how called, while if taken as a whole, the evidence shows a stockholding relation, the payments made will be dividends, equally no matter how called. We think it plain that the payments in this case were dividends under the rule set out and applied in all of the cases. We find no real conflict in the cases, no difficulty in attempting to apply them.

The cases on which appellee most strongly relies are all cases where there was either a statutory lien securing payment, a fixed guarantee of payment or a fixed time to pay, plainly showing that the payments were to be of interest on a debt, payable at all events, rather than of dividends, payable out of earnings. Commissioner of Internal Revenue v. O. P. P. Holding Co., 2 Cir., 76 F.2d 11; Commissioner of Internal Revenue v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792; Heller v. National Marine Bank, 89 Md. 602, 43 A. 800, 45 L.R.A. 438, 73 Am.St.Rep. 212; Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971.

Cases on which appellant relies are those in which there being no fixed time to pay, and the facts as a whole showing merely an interest in the company, the payments whether called interest or dividends, are treated as dividend payments. Coggeshall v. Georgia Land & Investment Co., 14 Ga.App. 637, 82 S.E. 156; Jeffer-

son Banking Co. v. Trustees of Martin Institute, 146 Ga. 383, 91 S.E. 463; Finance & Investment Co. v. Burnet, 61 App. D.C. 78, 57 F.2d 444; Elko Lamoille Power Co. v. Commissioner, 9 Cir., 50 F.2d 595; Jewel Tea Co. v. United States, 2 Cir., 90 F.2d 451, 112 A.L.R. 182; Warren v. King, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769.

The judgment below was wrong. It is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.