**BEMIS HARDWOOD LUMBER CO.**
v.
**UNITED STATES.**
Civ. A. Nos. 1270, 1271.

United States District Court
W. D. North Carolina,
Bryson City Division.
Jan. 19, 1954.

852

Harkins, Van Winkle, Walton & Buck, Asheville, N. C., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Harry E. McDermott, Jr., Special Assts. to Atty. Gen., James M. Baley, Jr., Asheville, N. C., U. S. Atty., for defendant.

WARLICK, District Judge.

These two actions were instituted by plaintiff to recover certain sums of money alleged to have been paid to the defendant under protest for income taxes for the years 1948 and 1949, and were filed in due time after the alleged payment. They were heard at Asheville by the court without a jury, and by consent, after having been previously consolidated. Jurisdiction of the actions comes about through the provisions of Title 28 U.S.C.A. § 1346, and the authority to prosecute the action is in line with and pursuant to Internal Revenue Laws of the United States, and particularly under 26 U.S.C.A. § 322. The amount sought to be recovered for 1948 is $8,-223.44 and for 1949 is $6,395.28, with interest from March 3, 1952, the date of payment under protest.

There are two questions to be determined:

1. Whether amounts accrued on taxpayer's books on debentures as called constitute "interest" on indebtedness within the meaning of Section 23(b) of the Internal Revenue Code; and if so,

2. Was 38% thereof deductible under Section 24(c) of said Revenue Code.

The plaintiff's contentions are that the amount sought to be recovered herein, as paid under protest, was interest that it had paid to the holders of its Series A Debenture Bonds for the years 1948–1949, and was deductible as a part of the cost of operating its business.

The defendant contends that the Series A Debenture Bonds as so called were in reality preferred stock issued by plaintiff and that the amounts paid in the two years to the holders represent "dividends" rather than "interest" as claimed by the plaintiff.

The Commissioner disallowed the so called interest as accrued on the books of the plaintiff taxpayer, and paid to the holders of the bonds in computing the tax for the years in suit.

The plaintiff corporation was organized under the laws of North Carolina and began business on January 1, 1937. It was chartered to take over the assets of a previously existing corporation known as the Bemis Lumber Company. This company was organized sometime during the year 1926. H. C. Bemis, formerly of Pennsylvania, was the principal owner and stockholder. He had been engaged in lumbering operations during the greater part of his life and prior to 1926 had purchased a great number of large boundaries of timber lands in Graham and other counties in western

North Carolina, which he conveyed to said corporation. It continued to acquire other boundaries of timber through him until his death in 1935. The corporation was engaged in cutting, logging and manufacturing in a systematic sort of way the timber on these various boundaries of land. During the whole of that period the company suffered serious financial reverses and experienced much difficulty in that sort of way. At the time of his death in April 1935 the said Bemis Lumber Company was virtually insolvent for lack of operating capital.

In July of that year L. C. Bemis, his son, who was associated with him in the enterprize died, leaving the corporation almost without management. Sometime during August of that year John B. Veach, a nephew of the late H. C. Bemis, and whose family was greatly interested as stockholders in the said Bemis Lumber Company, was elected president of the corporation and immediately assumed active management. At that time the financial statement of Bemis Lumber Company showed unquestionably that it was almost wholly insolvent and that though it had certain valuable assets it was not able to pay its debts then due and on which payments were sought. Among the bigger of the obligations of the corporation were outstanding notes in the approximate sum of $90,000, with past due interest in the sum of $25,000, secured by first mortgage on practically all of the real estate on which its principal assets, standing timber was growing, and that said mortgage was past due and was subject to foreclosure. In addition the company was faced with taxes past due to the county of Graham and the Town of Robinsville for more than five years. It also owed large amounts to various banks and actually had many outstanding debts in addition to those listed, due and payable to various persons and corporations. The structure was further incumbered by having many of the debts secured by assignments on lumber on hand, hypothecated receivables and other assets and little if any cash on hand which would permit current operations.

The capital structure of the Bemis Lumber Company consisted of 3625 shares of the common stock of the par value of $100 per share, which stock had voting rights in the corporation. In addition there was outstanding 3378 shares of 7% cumulative preferred stock of the par value of $100 per share. No voting rights attached to this preferred stock and no dividends had been paid on it for approximately eight years. Under the charter the preferred stock was, in the event of liquidation, subject to all preferred and common creditors, but in the event of a liquidation the owner and holder thereof would share in the assets of the corporation prior to the common stockholders. At the inception of the Bemis Lumber Company the preferred stock was all orginally issued to the late H. C. Bemis, but he from time to time had assigned practically all of it as either a collateral security or as an assurance of payment for debts due and owing to many creditors of the corporation and by him personally.

Following the death of H. C. Bemis and that of his son, L. C. Bemis, and the election of Mr. Veach as president, the Independent Order of Foresters, holders of the first mortgage as security for the outstanding notes, entered into negotiations with the officers in charge of the Bemis Lumber Company in an effort to protect its loan and to save the assets of the corporation for the use and benefit of its creditors.

After carefully surveying the facts it was finally determined and agreed upon that a new corporation would be organized and that the Independent Order of Foresters would reduce its indebtedness from the amount then due in the approximate sum of $115,000 principal and interest, to the sum of $60,000, and that that amount was to be payable at the rate of $1,000 per month and to mature fully on or before January 1, 1947, the obligation to bear interest at the rate of 4%. That upon the organization of the new corporation, all of the assets of the Bemis Lumber Company would be taken over, its debts assumed, and that the In-

dependent Order of Foresters would then receive a new first and prior mortgage on all the property which it then had under its mortgage from the Bemis Lumber Company and in addition thereto on all other physical assets as owned by the new company. Other stipulations and agreements were entered into, principally among them being that no cash payments would be made to the holders of any capital stock or other securities in the way of dividends, interest, etc., so long as any of this first and prior mortgage indebtedness then being executed to the Independent Order of Foresters was unpaid. Further agreements were worked out by those managing the corporation with respect to taxes due to the various counties and towns in which property was owned by the corporation, and arrangements were ultimately made with all other creditors by which the indebtedness then due and owing was secured and agreement was made by these creditors, that they would follow through in the new corporation.

After having worked out these many and varied details with the creditors, efforts were made and successfully concluded with the holders of the outstanding 7% preferred stock. An effort was first made to have these preferred stockholders of the Bemis Lumber Company accept a like and similar preferred stock in the new corporation, but they refused to accept such preferred stock and demanded payment of all past due dividends in cash and demanded further the right to be placed on the same basis as common creditors of the new corporation before they would agree to surrender their stock and permit the contemplated reorganization of the new corporation. They demanded a definite date for the payment of their indebtedness due over the past years and requested some voice in the management of the new corporation in view of the apparent lack of experience in those selected to manage its affairs.

Following these various discussions which extended over a period of approximately fifteen months and as a result of demands made by the creditors and preferred stockholders, a plan was arrived at to the effect that in consideration for surrendering of the outstanding preferred stock of the Bemis Lumber Company the new company would issue and deliver to the holders thereof Series A and B Debenture bonds. The Series A bonds to be issued in the denominations of $1,000, each, with interest at 6%, payable on or before January 1, 1947, conditioned however, that no payment would be made on said bonds prior to the time that the full indebtedness had been paid to the Independent Order of Foresters with interest, and the principal of the B bonds had been paid in full. Additionally on demand it was provided that each holder of a Series A bond was to have the same voting right as would each holder of a share of common stock in the corporation at all such regular and called meetings of the corporation. These Series A Debenture bonds, so far as pertinent herein, are in words as follows:

"In consideration of value received Bemis Hardwood Lumber Company promises to pay to the holder hereof ——————— ($———), with interest at six (6%) per centum in lawful currency of the United States of America at the Citizens Bank & Trust Company in Andrews, North Carolina, U. S. A., on January 1st, 1947: Provided, however, that no payment on the principal or interest hereof shall be made until the said company shall have paid the bonds this day issued to Independent Order of Foresters, aggregating Sixty Thousand ($60,000) Dollars, and shall also have paid all of its Fifty Thousand ($50,000) Dollars Series B Bonds this day issued by it.

"Provided, this Bond may be called for payment or partial payment at place above mentioned at option of maker.

"The registered holder of this bond shall be entitled to one (1) vote for each One Hundred ($100.00) Dollars face value thereof at all meetings of the stockholders of Bemis Hardwood Lumber Company."

The proposal was then effected by issuing Series A Debenture Bonds in the face amount of $100 for each share of the preferred stock of the par value of $100 in the Bemis Lumber Company and a Series B Debenture bond in the principal sum of $50 was issued by the plaintiff in payment of the accumulated dividends due on the preferred stock, these B Bonds being due and payable as were the A bonds, on or before January 1, 1947. All of these arrangements were subject of course to the payment of the mortgage indebtedness due to Independent Order of Foresters.

Then it was that the Bemis Hardwood Lumber Company, the plaintiff herein, was organized and received its charter. On setting up its capital structure and from the time of its organization in 1937, the plaintiff herein caused its books to carry these Series A bonds as bonded indebtedness and accrued interest annually on said bonds. Progress was slow, economic conditions were none too good, exceptional care was exercised and profits of the plaintiff were small,—as a matter of fact, with the exception of one year, until 1946, no profit was shown by the operation, but beginning with the year 1946 and continuously thereafter a profit has been made and taxes have accordingly been paid.

By February of 1942 the plaintiff, through marketing its timber, had paid off its first and prior mortgage securing the notes due to the Independent Order of Foresters in full and not too long afterward certain of the Series A and B bond holders were insistent in their demands on the company for payment, and between the years of 1947 and 1950 these bonds were liquidated in part by the payment of $144,700. When both the A and B Debenture bonds became due on January 1, 1947, the company being without a sufficient working capital, and following various contacts with the outstanding bond holders, was able to secure an extension for a payment thereof until January 1, 1952. Some of the bond holders refused said proposed extension and demanded payment and one at least pressed his demand to the extent that he employed counsel and subsequently was paid and satisfied by the plaintiff.

It would appear that these Series A Debenture bonds were issued and accepted through the common intent of both parties, the corporation issuing them and the parties accepting them, and that both intended to create evidences of indebtedness and interest bearing obligations and that they at no time intended to issue nor did the parties accepting them intend to acquire preferred stock. That the holders of 7% preferred stock in the Bemis Lumber Company exchanged it for the Series A and B debenture bonds bearing interest at 6%. That these bonds had a definite maturity date and are in every sense of the word an interest bearing obligation, evidencing the relation of debtor and creditor.

■ Naturally each holder of the preferred stock in the old corporation had the right to insist on being issued bonds as was done by agreement or on being paid in cash before the contemplated reorganization came about. It is admitted that the record contains no evidence that any interested party at the formation of the corporate plaintiff had any thought or idea by the issuance of the bonds herein to avoid payment of any taxes. It is further agreed that the holders of the B Bonds were the same as the owners and holders of the A Bonds. It further is found that payment of interest was not restricted to payment out of earnings, but on the contrary the obligation was fixed and certain in the payment of interest out of assets of the corporation. This makes and constitutes the holder under North Carolina statutory law a general creditor. G.S.N.C. § 55–137.

The question presented here has been before the courts on any number of occasions and our Court of Appeals has passed upon it in several cases. From these decisions certain well defined principles are laid out and become yardsticks to be used in one's guidance and determination. All the cases cited agree "that the question for decision in each case is, not what the payments are called,

but what in fact, they are, and that if taken as a whole, the evidence shows a relation of debtor and creditor, the payments made on account of that relation, will be interest, no matter how called, while if taken as a whole, the evidence shows a stockholding relation, the payments made will be dividends, equally no matter how called." United States v. Southern Georgia Ry. Co., 5 Cir., 107 F.2d 3, 6.

"The essential difference between a 'stockholder' and a 'creditor' is that the stockholder intends to embark upon the corporate adventure, taking the risks of loss attendant upon it that he may enjoy the chances of profit. The creditor, on the other hand, does not intend to take such risks so far as they may be avoided but merely to lend his capital to others who do intend to take them. Warren v. King, 108 U.S. 389, 399, 2 S.Ct. 789, 27 L.Ed. 769. While no comprehensive rule may be laid down for distinguishing in all cases between an investment in a corporation and a loan to it, one of the most important considerations is whether the right to share in the assets of the corporation in case of dissolution is subject to the rights of creditors. If subject to such right, there is a strong presumption that the interest in question is that of a stockholder. See Heller v. National Marine Bank, supra [89 Md. 602, 43 A. 800]. If it is not subject to such right, or if, as here, it is preferred over the right, the status of a creditor rather than of a stockholder is indicated. This is recognized by Treasury Regulations 45, art. 812, which provides: 'Art. 812. Borrowed Capital: Securities.—Any interest in a corporation represented by bonds, debentures, or other securities, by whatever name called, including so-called preferred stock, if with respect to the payment of either interest or principal it ranks with or prior to the interest of the general creditors, is borrowed capital and cannot be included in computing invested capital. Any such preferred stock may, however, be so included if it is deferred with respect to the payment of

both interest and principal to the interest of the general creditors.' * * *

" 'None of the decided cases lay down any comprehensive rule by which the question presented may be decided in all cases, and "the decision in each case turns upon the facts of that case." * * In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it.' " Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, 974; Dayton & Michigan R. Co. v. Commissioner of Internal Revenue, 4 Cir., 112 F.2d 627.

"It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due. Elko Lamoille Power Co. v. Commissioner [of Internal Revenue], 9 Cir., 50 F.2d 595; Commissioner [of Internal Revenue] v. Proctor Shop, 9 Cir., 82 F.2d 792; Dayton & Michigan R. Co. v. Commissioner, supra; United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3; Commissioner [of Internal Revenue] v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611. * *

"If the amount claimed as deductible was interest then the claim should be allowed. Interest has been defined by the Supreme Court as 'the amount which one has contracted to pay for the use of borrowed money.' Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 214, 76 L.Ed. 484." Brown-Rogers-Dixson Co. v. Commissioner of Internal Revenue, 4 Cir., 122 F.2d 347, 350.

I therefore conclude that the amounts sought herein are deductible expenses and represent interest paid by the plaintiff to the holders of its Series A Debenture bonds and that having paid these taxes plaintiff is entitled to recover such with interest,—subject, however, to my ruling on the second question for determination.

The second question has to do with the provisions of Section 24(c) of the Internal Revenue Code. Under that section an accrued deduction for interest is not allowable (1) if not paid within

two and one-half months after the close of the taxpayer's taxable year, (2) if the amount is not includible in the creditor's gross income for the taxable year in which, or with which, the taxable year of the taxpayer ends, and (3) if, at the close of the taxpayer's taxable year or at any time within two and one-half months thereafter, both the taxpayer and the creditor are persons between whom losses would be disallowed under Section 24(b), supra. Section 24(b) (1) (B) disallows losses between an individual and a corporation where more than 50% in value of its outstanding stock is owned, directly or indirectly, by or for such individual. Section 24(b) (2) provides that for the purpose of applying Section 24(b) (1) (B), the following rules should apply:

\* \* \* \* \*

(A) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners or beneficiaries;

(B) An individual shall be considered as owning the stock owned, directly, or indirectly, by or for his family;

(C) An individual owning (otherwise than by the application of subparagraph (B) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner;

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

The evidence shows that more than 50% of the stock of the corporation was owned by Mary V. Wise, Virginia Alice Veach, and John B. Veach, all related as brother and sisters, and who were entitled to receive 38.183% of the interest accrued on the books of the taxpayer. It was stipulated between counsel that none of these persons had received this money or had reported it as income so as to prevent the application of Section 24(c).

My decision, therefore, is that plaintiff is entitled to have and recover of the defendant 62% of the amount sought to be recovered in each of the consolidated cases.

Counsel will submit judgment carrying this into effect.