F. K. ELLINGTON v. RALEIGH BUILDING SUPPLY COMPANY.

(Filed 27 March, 1929.)

**1. Corporations—Stock—Preferred Stock—Priority—Creditors.**

Our statute, C. S., 1156, and the amendments thereto, fixes the authority of a corporation formed thereunder to issue its preferred stock and the priorities thereof are always subject to the rights of creditors, and an attempt of the corporation to give the preferred stockholders a lien upon its realty in the nature of a mortgage or deed of trust under the provisions of its charter granted to it under the general law, the lien so attempted is inoperative as to the statutory prior right given the creditors of the corporation.

**2. Mortgages—Registration—Priority—Corporations.**

Where preferred stockholders of a corporation are given a priority over creditors by an agreement in its charter and certificates of stock giving the holders thereof a lien on, its realty, even if the agreement be construed as a mortgage, it is inoperative as to creditors without compliance with our statute requiring registration. C. S., 3311.

APPEAL by Mrs. M. M. Holding from *Harris, J.,* at Second November Term, 1928, of WAKE. Affirmed.

Upon the hearing it was admitted by the parties:

"(1) The Raleigh Building Supply Company was incorporated 25 February, 1920, under the laws of the State of North Carolina, the incorporators being G. S. Vaught, F. K. Ellington, Graham H. Andrews and John W. Thompson.

(2) That said corporation had a paid in capital stock of $50,000, of which $30,000 was common stock and $20,000 was denominated preferred stock.

(3) That the proceeds of sale of stock was used in the purchase from Amzi Ellington, executor of the lumber plant owned by the W. J. Ellington Estate at $21,500 in cash and $1,500 in preferred stock, which lumber plant included the real estate in controversy, and a lot of machinery and equipment; that there was no segregation of the funds derived from the sale of preferred stock (unless paragraph 5 of the charter of said corporation segregated it), but same was paid for as hereinbefore stated; that deed to said real property was duly executed to said corporation dated 28 February, 1920, and recorded in Book 354, page 397, registry for Wake County.

(4) That all the real estate ever owned by Raleigh Building Supply Company was purchased from Amzi Ellington by said Raleigh Building Supply Company, and said property was situate on Harrison Avenue, Raleigh, North Carolina, and was known as the Ellington Lumber Company property.

(5) That Mrs. M. M. Holding paid to said corporation on 1 March, 1920, the sum of seven thousand dollars ($7,000) in cash, and there was issued and delivered to Mrs. Holding by said corporation Certificate No. 2, representing seventy (70) shares, denominated as preferred stock of said Raleigh Building Supply Company of the par value of $100 each, which said certificate was issued pursuant to paragraph 5 of the charter of said corporation, which contained the following provisions:

'5. The preferred stock shall be nonvoting stock, and bear cumulative seven per cent dividends (3½ semiannually), payable prior to any dividends on common stock; and, further, said preferred stock shall be callable for retirement and cancellation at the option of the corporation by its directors, after five years, at $115 per share and any dividends cumulated and unpaid, upon thirty days notice to holders of record at any dividend period. It is further provided that the holders of said shares of the preferred stock shall have and to them is hereby conveyed in trust a first lien upon the real estate of the corporation purchased of Amzi Ellington, executor, being known as the Ellington Lumber Plant— but not the machinery or equipment therein—for the purpose of securing the payment of said holders of the face value of each of said shares and accumulated dividends thereon. The incorporators of this company hereby declare themselves, their successors and assigns, trustees of the said real estate of this corporation, acquired for the purpose herein set out. And it is further provided that all common stock of this corporation, issued or to be issued shall be issued subject to the said trust.'

(6) That upon payment of $7,000 in cash by said Mrs. M. M. Holding, 1 March, 1920, the following certificate was issued and delivered to her the same being the form of certificate used by said corporation for said purpose, to wit:

'No. 2.                                                      Seventy shares.

Incorporated Under the Laws of the State of North Carolina,

Raleigh Building Supply Company,

Raleigh, North Carolina.

This certifies that Mrs. M. M. Holding is the owner of Seventy Shares of the par value of $100 each, fully paid, of the Preferred Capital Stock of .............................. Raleigh Building Supply Company .................. transferable only on the books of the Company by the holder hereof, in person, or by duly authorized attorney, upon the surrender of this certificate.

50—196

## Preferred.

The holders of the Preferred Stock are entitled to receive when, and as declared out of the surplus or net profits of the Company, dividends at the rate of seven per cent per annum, payable semiannually, before any dividend shall be set apart or paid upon the Common Stock. The dividends of the Preferred Stock shall be cumulative from and after 1 July, 1920, and shall not bear interest. The Board of Directors may pay dividends upon the Common Stock provided the dividends upon the Preferred Stock, with all accumulations, including accrued dividends, to the date of the payment of the Common Stock dividend shall have been declared and shall have been paid in full, or a sum sufficient for the payment shall have been set apart for that purpose, but not otherwise. In case of liquidation or dissolution of the Company, the holders of the Preferred Stock shall be entitled to be paid in full, both the par amount of their shares and the accrued dividends, before any amount shall be paid to the holders of the Common Stock, but after such payment the remaining assets shall be paid to the holders of the Common Stock according to their respective shares. The holders of the Preferred Stock are entitled to a first lien upon such real estate assets of this Company, as more fully appears in the charter of said Company, filed in the office of the Secretary of State, 24 February, 1920. The Preferred Stock shall be nonvoting stock, but is subject to redemption, at the option of the Company, after five years at $115 and accrued dividends, at any dividend period, upon thirty days' notice to stockholders of record.

In Witness Whereof, The said corporation has caused this certificate to be signed by its duly authorized officers, and to be sealed with the seal of the said corporation at Raleigh, N. C., this 1 March, 1920.

(Signed)   G. S. Vaught, *President.*

(Signed)   Jno. W. Thompson, *Secretary.*   (Seal.)

Shares $100 Each.                                    Shares $100 Each.'

(7) That said Mrs. M. M. Holding would not have subscribed for said shares but for the provisions of paragraph 5 of the charter of said corporation, and did subscribe and pay for seventy shares of the said preferred stock.

(8) That all of the accounts of the general creditors were contracted by the corporation subsequent to the issuance of the shares denominated as preferred stock to Mrs. Holding.

(9) That the charter of said corporation was duly recorded in the office of the clerk of the Superior Court of Wake County as provided by law.

(10) That while said corporation was being operated by its officers and directors, to wit, about 26 May, 1920, said company arranged to borrow the sum of $19,500 from the Citizens National Bank; the proceeds of loan being used in the operation of said business and in order to secure the loan aforesaid, each of the officers and directors of said company were required by said bank and did personally guarantee payment to said bank and become personally liable therefor.

(11) That Graham H. Andrews was one of the incorporators of said Raleigh Building Supply Company and was at all times during the existence of the said company director of the same, and also was throughout said time, and is now an officer of the Citizens National Bank, to wit, its cashier.

(12) That Graham H. Andrews, cashier of said bank and director of said company, did not personally negotiate for, make, nor obtain said loan.

(13) That all of the accounts of the general creditors were contracted by the corporation subsequent to the issuance of the shares to Mrs. Holding denominated preferred stock aforesaid.

(14) That said corporation became insolvent and, on or about 15 June, 1922, J. C. Little and R. W. Kennison were appointed receivers thereof.

(15) That the officers and directors of said corporation at said time were G. S. Vaught, Jno. W. Thompson, G. H. Andrews, F. K. Ellington, P. H. Busbee and W. G. Briggs.

(16) That said receivers, acting under direction of the court, have applied personal property assets upon the indebtedness of said corporation, and duly filed their reports from time to time, all of which have been approved by the court and have distributed approximately the sum of $33,000.

(17) The unpaid claims against said corporation (not including balance of costs of administration) of thirty-nine general creditors now amount to $19,517.12, including the balance of $9,495.56 due the Citizens National Bank on the aforesaid note, and there are no assets to be applied thereon except the proceeds from sale of said real property.

(18) That acting under further orders of the court, said receivers sold the real property of said company for $13,600 cash, which sale was duly confirmed, and said money is now being held by said receivers for disbursement.

(19) That the proceeds of sale will not be sufficient to pay the claims of the thirty-nine general creditors in full; that no dividends have ever been declared or paid on the common stock of said corporation.

(20) That said Mrs. Holding filed notice with the receivers alleging preferred claim to the said proceeds of sale of land for that under the

said certificate issued her and the provisions therein and paragraph 5 of said charter, she was in fact a creditor, and title to the real estate was in the incorporators and their successors as trustees for payment of such indebtedness before said land or any part of the proceeds thereof could be applied to the amounts due general creditors, including the corporation's debt to the Citizens National Bank, as set forth in Exhibit 'A.'

Assignments of Errors: (1) The court erred in holding that the said Mrs. M. M. Holding did not have a prior lien over general creditors of said corporation on the funds derived from a sale of the old Ellington Lumber Company land described in paragraph 5 of the charter of said Raleigh Building Supply Company. (2) The court erred in signing the judgment appearing in the record."

*Clyde·A. Douglass and Pou & Pou for Mrs. M. M. Holding.*
*Briggs & West and Philip H. Busbee for receiver and general creditors.*

CLARKSON, J. *The question involved:* Has Mrs. M. M. Holding, who holds a certificate for seventy shares of stock in defendant company of the par value of $100 a share, fully paid, denominated preferred stock in the certificate, by reason of stipulations in defendants' charter and referred to in the certificate a first lien on the real property of the defendant, superior to the general creditors of defendant company which is insolvent? We think not.

The provision in the charter (a): "It is further provided that the holders of said shares of the preferred stock shall have and to them is hereby conveyed in trust a first lien upon the real estate of the corporation purchased of Amzi Ellington, executor, being known as the Ellington Lumber Plant—but not the machinery or equipment therein—for the purpose of securing the payment to said holders of the face value of each of said shares and accumulated dividends thereon. The incorporators of this company hereby declare themselves, their successors and assigns, trustees of the said real estate of this corporation, acquired for the purpose herein set out. And it is further provided that all common stock of this corporation, issued or to be issued, shall be issued subject to the said trust."

In the certificate of stock (b): "The holders of the Preferred Stock are entitled to a first lien upon such real estate assets of this company, as more fully appears in the charter of said company filed in the office of the Secretary of State, 24 February, 1920."

Part C. S., 1156, and amendments, is as follows: "Every corporation has power to create two or more kinds of stock of such classes, with

such designations, preferences, and voting powers or restriction or qualifications thereof as are prescribed by those holding a majority (two-thirds in the case of banks and building and loan associations) of its outstanding capital stock; and the power to increase or decrease the stock as herein elsewhere provided applies to all or any of the classes of stock; and the preferred stock may, if desired, be made subject to redemption at not less than par, at a fixed time and price, to be expressed in the certificate thereof; and the holders thereof are entitled to receive, and the corporation is bound to pay thereon, a fixed yearly dividend, to be expressed in the certificate, payable quarterly, half-yearly, before any dividend is set apart or paid on the common stock, and such dividends may be made cumulative. *In case of insolvency, its debts or other liabilities shall be paid in preference to the preferred stock,"* etc. N. C. Code, 1927, sec. 1156.

Corporations are artificial beings and are organized to do business in accordance with the statutory provisions of the law on the subject. The powers, rights, duties and liabilities are fixed by statute and they are creatures of the law. Every one dealing with a corporation does so with the express or implied limitations imposed by statute. It has the power to issue *preferred stock,* but *"In case of insolvency its debts, or other liabilities shall be paid in preference to preferred stock."*

If it is admitted that the charter is in the nature of a mortgage, yet it was not duly probated and recorded in the office of the register of deeds, where the land was situate.

C. S., 3311 is as follows: "No deed of trust or mortgage for real or personal estate shall be valid at law to pass any property as against creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor, but from the registration of such deed of trust or mortgage in the county where the land lies; or in case of personal estate, where the donor, bargainor or mortgagor resides; or in case the donor, bargainor or mortgagor resides out of the State, then in the county where the said personal estate, or some part of the same, is situated; or in case of choses in action, where the donee, bargainee or mortgagee resides. For the purposes mentioned in this section the principal place of business of a domestic corporation is its residence." In construing the registration laws of this State, this Court has consistently held that no notice, however full and formal, will supply the place of registration. *Whitehurst v. Garrett, ante,* 154; *Mills v. Kemp, ante,* 309; *Salassa v. Mortgage Co., ante,* 501; *Weeks v. Adams, ante,* 512.

As between the parties, a mortgage is valid without registration, but not so as to creditors. Preferred stock has priority as between common and preferred, but not as to creditors. (See *Redrying Co. v. Gurley,* 197 N. C., 56.) It will be noted that the last part of section 5 of the charter

says: "And it is further provided that all common stock of this corpora-
tion issued or to be issued shall be issued subject to the said trust." The
*charter* declares and fixes the trust concerning the land to be for the
preferred stock and the common stock is subject to that trust, but the
*statute* declares that in case of insolvency, debts of the corporation are
given preference over the *preferred stock*.

A preferred stockholder, under the charter and statute provision, has
certain preferences as against the common stock, but not as against
creditors.

In *Power Co. v. Mill Co.*, 154 N. C., at p. 77, citing numerous au-
thorities, it is said: "At one time it was a matter of discussion as to
whether a preferred stockholder had any rights as a creditor of the cor-
poration or could properly be classified as such. But the law is now
clearly settled and beyond dispute that a preferred stockholder is not a
creditor, and must be confined to his rights as a stockholder." *Cotton
Mills v. Bank*, 185 N. C., 7.

When a statute gives the preferred stock a prior lien as to creditors or
makes a preferred stockholder a creditor, then other creditors are bound
by the statute, but in this State there are no such statutes, but the
statute is to the contrary. The charter could not give this preference in
the teeth of the clear language of the statute. The charter of incorpora-
tion is subject to the statute. So even if the charter was in the nature
of a mortgage and duly probated and recorded, the status of the pre-
ferred stockholder was not that of a creditor and the preferred stock-
holder would not have preference under the statute as against a creditor.
Because the charter is issued by the Secretary of State gives no special
efficacy, but the provisions of the charter must be subject to the statute
as written. Water cannot rise above its source. The preferred stock-
holder in this action, under its charter, had a special preference over
the common stock (1) bear cumulative seven per cent dividends (3½
semiannually), (2) 'shall be callable for retirement and cancellation at
the option of the corporation by its directors after five years at $115
per share, and any dividend cumulated and unpaid upon 30 days notice
to holders of record at any dividend period." How can it be contended
that the holder of the preferred stock had the status of a creditor? The
whole transaction would be usurious under the usury laws of this State
if this contention was correct. The usury statute and decisions answer
this contention. *Pratt v. Mortgage Co., ante*, 294. The cases cited
by appellant are bottomed ordinarily only on *statutes* and different from
the statute in this State. For the reasons given, the judgment below is
    Affirmed.