**BAKERS' MUTUAL COOPERATIVE ASS'N OF NEWARK, N. J., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 7575.

Circuit Court of Appeals, Third Circuit.

Jan. 7, 1941.

Charles Handler, of Newark, N. J., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and William L. Cary, Sp. Asst. to the Atty. Gen., for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is a petition to review decisions of the United States Board of Tax Appeals It involves but one question. It is whether payments made by the taxpayer to the holders of certain "certificates of deposit" issued by it were payments of interest upon indebtedness or whether they are to be classified as payments of dividends. If payments of interest they are deductible in computing net income; if payments of dividends they are not.[1] The tax years involved are 1933, 1934, 1935 and the 1933 tax also involves excess profits tax as well as income tax. The one legal question before us is the same, however, with regard to each.

In 1903 there was organized a Bakers' Mutual Cooperative Association in Newark, N. J., for the purpose of buying bulk materials used in the baking business and selling them to its members or outsiders. The Association's constitution, adopted shortly after organization and in effect without important change during the taxable years under consideration provided in Article IV for assessments of $4 a year per member and extra assessments if called upon. It also provided that all members must make a deposit of at least $300 "to secure their credit, for which a certificate will be issued, said deposit to be used as working capital * * *". In 1904 the Association was incorporated in the State of New Jersey. The articles of incorporation provided for the issuance of capital stock, but the capital stock was never issued and the conduct of the Association's affairs went on subsequent to the incorporation as it had before.

The certificate mentioned in the quotation from the constitution is the pivot upon which

---

[1] Revenue Acts of 1932 and 1934, § 23(b), 26 U.S.C.A. Int.Rev.Acts, pages 489, 672.

this case turns. The form of the certificate is as follows:

No. ...... $........

### Certificate of Deposit

This Certif- icate | Not for self B M Co A But for all | is not Trans- ferable

Baker's Mutual Co-Operative Association

THIS CERTIFIES THAT ................. has deposited with the above Association the sum of ......... Dollars to be used a's prescribed in By-Laws of the above Association, and to share in the profits as declared in said By-Laws.

This Certificate is redeemable for the above amount, less all indebtedness to this Association, as prescribed in the By-Laws of this Association.

NEWARK, N. J. ...............
............ President.
............. Sec. Treas.

At the beginning of operations the Association paid nothing on the certificates of deposit as there was no profit. After that, when there were profits, 6 per cent on these deposits was paid and on some occasions members who ceased to pay their $4 annual dues and retired from the Association left their deposit money there and received 6 per cent per annum thereon. Profits above the amount necessary to pay 6 per cent on these deposits were distributed to members on the basis of their purchases from the Association, not the amount deposited. According to the testimony "at the very beginning" the board of directors used to authorize the payment of this 6' per cent. There was such a resolution in 1921. There is testimony implying that payment was made from 1932 through 1935 by yearly authorization of the directors, but it is somewhat equivocal.· There have been further distributions of profits to member-purchasers and there is an accumulated surplus, for the affairs of the Association have prospered.

 We think it perfectly clear that the money paid out to the holders of these certificates is not to be classed as interest but dividends. What the parties have called the certificates or the payments is not, of course, controlling. They have not used their terms as terms of art, and, even if they had, the legal conclusion to be drawn from them is for the court. A great many judicial decisions have been cited in the briefs of counsel involving controversies as to whether a given payment was to be classed as interest or dividend. But each case turns so upon its peculiar facts that the discussion of such decisions and their citation here would serve no useful purpose. [2]

The taxpayer argues, in support of its contention, that it was unconditionally obliged to pay interest on these certificates. We do not find anything in the facts to support this argument. There is no promise to pay in the certificate itself. The facts state that interest was not paid during the first years of the association. It is argued that the resolution of the directors in 1921 declared that the Association would pay 6 per cent on the certificates from that time forth. We do not interpret the evidence to call for any such definite statement of future policy by that resolution. But even as such a statement of policy it would give no foundation for a conclusion that the association obligated itself to make such payments indefinitely into the future. We have no quarrel with the taxpayer's definition of a contract implied in fact, but there is not one present here.

The taxpayer argues that even if there was not an unconditional obligation to pay interest on the certificates, certainly there was an obligation to pay the interest if there were profits. But such a distribution of corporate earnings comes within the definition of a dividend in the Revenue Act 1932, § 115, 26 U.S.C.A. Int.Rev.Acts, page 520, and therefore this argument is unavailing.

It is clear that the people who advanced this money must have been running the risk of loss for the Association had no other capital. Whether it borrowed money with which to buy goods is not in the record, but it is in the record that there was no capital stock ever issued by this corporation. While the holders of the certificates did not thereby become voters those persons who became members and paid the $4 annual membership fee were also required to make a deposit of at least $300 and the certificates were non-transferable. While obligor and obligee are definite enough the obligation,

---

[2] See, for example, Helvering v. Richmond, F. & P. R. Co., 4 Cir., 1937, 90 F.2d 971; Jewel Tea Co., Inc. v. United States, 2 Cir., 1937, 90 F.2d 451, 112 A.L.R. 182; Com'r of Int. Rev. v. O. P. P. Holding Corp., 2 Cir., 1935, 76 F.2d 11.

as set out in the certificate, is to use the money only as prescribed in the By-Laws of the Association and to "share in the profits as declared in said By-Laws", plus the right of redemption.

It is not even true that these certificate holders were limited to 6 per cent upon their money. Profits in addition to this 6 per cent, after provision for reserves, etc., were distributed in proportion to the amount of their purchases. In other words, the greater profits went to those who, by doing business with the Association, had helped build up the fund.

Statutory categories such as "interest" and "dividends" obviously have to be expanded beyond original meanings when applied to enterprises which have unusual features. It is clear to us that the return received by these persons who paid their money into this Association's venture are in the class of those receiving dividends and not interest.

The decisions of the Board of Tax Appeals are affirmed.