## BROWN–ROGERS–DIXSON CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 4805.

Circuit Court of Appeals, Fourth Circuit.

Aug. 26, 1941.

J. B. Grice, of Washington, D. C., for petitioner.

Louise Foster, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

### NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals sustaining the determination, by the Commissioner of Internal Revenue, of a deficiency in the income taxes of the petitioner, Brown-Rogers-Dixson Company, a North Carolina corporation, for the years 1936 and 1937 in the sums of $4,172.58 and $3,-619.65.

After a hearing the Board, in November, 1940, entered a decision affirming the determination of the Commissioner and fixed the amount of the deficiencies in income of $4,048.37 for the year 1936 and $3,495.44 for the year 1937. The corporation then filed this petition to review the Board's action.

Petitioner is engaged in the wholesale and retail hardware business, in Winston-Salem, North Carolina. Its charter provided for an existence of ninety-nine years from the date of its organization in June, 1904.

On January 6, 1936, the taxpayer's board of directors adopted a resolution providing in part as follows:

"Resolved, That in the opinion and best judgment of the Board of Directors of Brown-Rogers-Dixson Company it is advisable and advantageous to amend the charter of said corporation so as to provide for an increase in the authorized capitalization of said corporation from $500,000.00 of common stock to $750,000.00 Capital stock, said stock consisting of the following classes: First, debenture preferred stock eight per cent (8%) $400,000.00; common class 'A' stock with voting power $100,000.00; common class 'B' non-voting stock $250,000.00; the $400,000.00 of debenture preferred stock to be obligations or evidences of indebtedness in the face amount of $100.00 at eight per cent (8%), the form of which is hereinafter set out; all other stock hereinbefore mentioned to be of $100.00 par value per share.

"Be it further resolved, That the present common stockholders of Brown-Rogers-Dixson Company are hereby granted the privilege of exchanging their present shares of common stock for the eight per cent (8%) debenture preferred stock obligations, share for share, on the basis of $100.00 par value, before offering any of the eight per cent (8%) debenture preferred stock for public sale.

"And be it further resolved, That all the common stock now issued and outstanding be returned, retired and cancelled upon the books of the corporation upon its surrender in payment of stockholders' notes receivable, given in exchange for the eight per cent (8%) debenture preferred stock obligations.

"And be it further resolved, That the eight per cent (8%) debenture preferred stock obligations hereinbefore referred to shall be non-voting and in no way participate in the surplus or profits of the corporation, and have no control over the affairs of the corporation and no relationship to the corporation other than that specifically set out in the debenture certificate. * * *"

On the same date the stockholders of taxpayer also adopted the same resolution and assented to the changes brought about by it. On December 25, 1936, the amendment of the certificate of incorporation was filed wih the Secretary of the State of North Carolina.

The back of the certificates of 8 per cent debenture preferred stock bore the title "Debenture Preferred Stock", and the material part of the face of the certificates reads as follows:

"This is to Certify that Brown-Rogers-Dixson Company, Winston-Salem, N. C., hereby acknowledges itself indebted to —— in the sum of —— Dollars, principal payable at the expiration of the corporate existence of the corporation, interest at the rate of eight per cent (8%) per annum, payable annually on the thirty-first (31st) day of December in each year, in gold coin of the United States of America, of the present standard of weight and fineness, represented by —— shares of debenture stock of the corporation, each of the par value of one hundred dollars. In the payment of their several claims, all

creditors, other than the stockholders of the corporation, shall rank superior to the holders of the debenture stock, ·but all holders of debenture stock shall rank pari passu with each other, and superior to the stockholders of the corporation, with respect to their common stock, either Class 'A' or Class 'B'. The corporation shall, nevertheless, have the right, the interest on the debenture stock having been paid, from time to time to declare and pay dividends out of the net earnings, upon any of the common stock or share capital of the corporation. The debenture stock shall be subject to redemption by the corporation upon any interest date, upon the affirmative vote of two-thirds in amount of the voting capital stock of the corporation then issued and outstanding, at the rate of One Hundred and One Dollars per share for each One Hundred Dollars of the principal· or par value, plus all unpaid accrued interest, including interest at the aforesaid rate of eight per cent (8%) per annum up to the time of redemption. Neither the corporation or its shareholders shall have power to mortgage the property or franchises of the corporation, except by the written consent of the then registered holders of at least two-thirds in amount of the debenture stock."

On January 10, 1936, $300,000 of the new 8 per cent debenture preferred stock was issued to the common stockholders of taxpayer, share for share. This was accomplished by the stockholders giving taxpayer notes which they then paid by surrendering their old shares of common stock. Taxpayer did not receive any cash.

In January, 1936, taxpayer issued $30,000 of new Class A common stock and in December, 1937, it issued $54,000 par value of Class B common stock to holders of Class A common stock for 30-day notes which had previously been given to them as dividends.

The earned surplus of taxpayer was $201,982.06 on December 31, 1936, and $191,801.40 on December 31, 1937.

On taxpayer's capital stock tax return for 1937, taxpayer's capital stock was designated as $300,000 preferred stock and $30,000 common stock. On its income tax returns for each of the years 1936 and 1937, taxpayer deducted $24,000 as interest paid to holders of the 8 per cent debenture stock.

Taxpayer kept its books on an accrual basis in 1936 and 1937.

The Commissioner disallowed the claimed deduction and treated such amount as dividends.

The only question involved is whether the amounts designated as interest and paid by the petitioner on its debenture preferred stock for the years 1936 and 1937 were in fact dividends and not deductible from taxable income.

The Statute and Regulations involved are:

Revenue Act of 1936, c. 690, 49 Stat. 1648:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this title [chapter]. \* \* \*." 26 U.S.C.A. Int.Rev.Code, § 23(b).

Treasury Regulations 94, promulgated under the Revenue Act of 1936:

"Art. 23(b)—1, Interest.— \* \* \*

\* \* \* \* \*

"So-called interest on preferred stock, which is in reality a dividend thereon, cannot be deducted in computing net income."

The names used in the resolution of taxpayer's board of directors to designate the certificates issued and to designate the amount annually paid to the holders of the certificates are not controlling in determining their true nature. Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, and Dayton & Michigan R. Co. v. Commissioner, 4 Cir., 112 F.2d 627.

In these cases will be found a complete discussion by Judge Parker, of this Court, of the principle here involved and an analysis of the decisions.

The title, "Debenture Preferred Stock", given the certificates is in itself contradictory. "Debenture" is used to denote certificates of indebtedness, "Stock" to denote investment in the enterprise.

The "Debenture Preferred Stock" certificates issued by the petitioner had no preference, either as to principal or inter-

est, over the creditors of the corporation. There was no due or maturity date fixed for the payment of the principal. It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due. Elko Lamoille Power Co. v. Commissioner, 9 Cir., 50 F.2d 595; Commissioner v. Proctor Shop, 9 Cir., 82 F.2d 792; Dayton & Michigan R. Co. v. Commissioner, supra; United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3; Commissioner v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611.

In the South Georgia case [107 F.2d 5], the Court said: "* * * There is, thus, an entire absence here of the most significant, if not the essential feature of a debtor and creditor as opposed to a stockholder relationship, the existence of a fixed maturity for the principal sum with the right to force payment of the sum as a debt in the event of default."

No money was received by the petitioner for these certificates but, although done in a roundabout way, they were merely exchanged for common stock certificates originally representing a capital investment. As was said by the Board of Tax Appeals: "They were issued not for money loaned but in lieu of common shares, and were therefore a new evidence of money originally invested in and at the risk of the business."

■ That the petitioner treated the new stock as a part of its capital structure and not as a debt is shown by the fact that the stock was carried on its general ledger as capital stock and in its tax return for the year 1937 this stock was designated as capital.

There was no provision made in the certificates to enforce the payment of the eight per cent (8%) annually in case of default. If the eight per cent (8%) could be considered as interest and therefore deductible the question at once arises as to the usurious nature of the transaction. Ellington v. Supply Co. 196 N.C. 784, 147 S.E. 307. However, in view of our conclusion as to the main point in the case, it is not necessary to discuss that question. It is undoubtedly true that the claim for the annual payment of the eight percent (8%) could not be enforced as prior to the claims of general creditors in the event of insolvency.

■ "In calculating net income for taxation a deduction from gross income is allowable only if there is clear statutory provision therefor." Deputy, Administratrix, et al. v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416.

■ If the amount claimed as deductible was interest then the claim should be allowed. Interest has been defined by the Supreme Court as "the amount which one has contracted to pay for the use of borrowed money." Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 214, 76 L.Ed. 484.

■ The amounts paid by the petitioner in the years in question partook more of the nature of dividends than of interest and were not deductible. The decision of the Board is accordingly affirmed.

Affirmed.