STAKED PLAINS TRUST, Limited, v. COMMISSIONER OF INTERNAL REVENUE.

No. 10980.

Circuit Court of Appeals, Fifth Circuit.

June 28, 1944.

J. P. Jackson, of Dallas, Tex., for petitioner.

Joseph S. Platt, Sewall Key, Helen R. Carloss, and Newton K. Fox, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

In its income tax return for 1937 petitioner deducted the sum of $29,750 as interest accrued on indebtedness under Section 23(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 23(b). The Commissioner disallowed the deduction on the ground that the sum did not represent interest due on an indebtedness. The Tax Court sustained the Commissioner and the taxpayer brought the case here for review.

The taxpayer, a trust taxable as a corporation, was formed in 1914 to take over and develop or sell in subdivisions a tract of 60,000 acres of land in Texas acquired in 1912 by Texas Prairie Lands, Ltd., a Canadian corporation. In 1912 the corporation issued bonds in the sum of $2,433,-333.33, which were secured by a mortgage on the land. In 1914 it issued Prior Lien Notes in the sum of $500,000, which also were secured by a mortgage on the land to which the bondholders' mortgage was subordinated, and the noteholders also became owners of Profit Sharing Certificates. The entire beneficial interest in the trust assets, represented by 35,000 shares, was issued to the corporation and by it deposited as additional security for payment of the bonds. The trustees were empowered to borrow money, to issue additional beneficial interest shares containing preferential provisions, to manage the project free of interference, and to declare distributions.

In 1916 the enterprise needed additional liquid resources. After borrowing $100,-000 in September, a second trust called Prairie Lands Trust, Ltd., was formed December 1, 1916. To this trust, in consideration of the assumption by it of certain obligations of the taxpayer, including the $100,000 debt, the taxpayer conveyed certain contracts of purchase and vendor's lien notes, together with physical equipment and its accounts receivable, and the sharehold-

ers of the new trust were guaranteed a return of $375,000 plus interest at six percent. The new trust secured funds with which to perform its obligations from the proceeds of subscriptions for its beneficial interest, represented by 4,250 equal shares, to which the bondholders' security was subordinated.

In December, 1919, pursuant to a plan and agreement to reorganize the entire enterprise, the new trust retransferred to the taxpayer all its assets then remaining, whereupon the bonds and notes of the original corporation and the beneficial interest shares of the new trust were cancelled and retired. The taxpayer exchanged "Liquidation Certificates (Class A)" for the Prior Lien Notes and Profit Sharing Certificates, and "Liquidation Rights Certificates (Class B)" for the trust shares. The Class A Certificates were in an aggregate principal sum of $570,000, and entitled the owners thereof to the payment in full of a specified principal sum with interest before any payment should be made upon the Class B Certificates. The Class B Certificates provided that each registered holder thereof was entitled to liquidation rights of the Staked Plains Trust, Limited, "redeemable by payments to be made out of the funds of the said trust from time to time when and as authorized by the Trustees" for the total sum of $160 plus interest at 7% per annum from January 1, 1920, for each right; that no payments should be made until all Class A Certificates had been paid; and that no payments in liquidation should be made upon the shares of the trust until all the liquidation rights had been redeemed in full.

The property was operated under the reorganization plan continuously after 1919. As of December 31, 1937, the entire principal of the Class A Certificates had been paid, and the interest had been reduced to $202,422.58. No payment of any kind had then been made to holders of Class B Certificates. It was with respect to the Class B Certificates that the taxpayer accrued interest in the sum of $29,750 in its tax return for 1937. The legality of the deduction depends upon whether the Class B Certificates were an indebtedness of the taxpayer within the purview of Section 23(b), supra.

The applicable portion of this statute provides that in computing net income there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.[1] The judicial decisions have uniformly construed this statute to authorize deductions of interest paid or accrued where the strict legal relationship of debtor and creditor existed between the taxpayer and the payee of the interest, and have with equal uniformity determined that the deduction does not apply where the payee participates by virtue of his ownership of a proprietary interest in the assets of the taxpayer.[2] In the latter instance the payment is not of interest to a creditor, but a distribution of dividends to a shareholder.[3] Whether the holders of the Class B Certificates were creditors of the taxpayer or owners of its assets is a question of fact.[4] The Tax Court's finding thereon that these Certificate holders were not creditors of the taxpayer, but owned an interest in its assets by virtue of which they participated as preferred stockholders, must be sustained if it was warranted by the evidence.[5]

We think the stated facts upon analysis demonstrate the correctness of the finding of the Tax Court. The taxpayer's plan of reorganization, which was in name and fact a liquidation arrangement, reclassified the existing charges against its assets and profits into three categories. In the first group were the holders of the Prior Lien Notes of the original corporation who were and had always been secured creditors. The Class A Certificates issued to these creditors were for a fixed sum which exactly aggregated the principal amount of the notes and certificates supplanted, and, though not payable at a fixed time, were made a first charge upon the assets of the

[1] 26 U.S.C.A. Int.Rev.Code, § 23(b).

[2] Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3; Commissioner v. T. R. Miller Mill Co., 5 Cir., 102 F.2d 599; Jewel Tea Co. v. United States, 2 Cir., 90 F.2d 451, 112 A.L.R. 182; Commissioner v. J. N. Bray Co., 5 Cir., 126 F.2d 612; Parisian, Inc. v. Commissioner, 5 Cir., 131 F.2d 394.

[3] United States v. South Georgia Ry. Co., supra; Finance & Investment Corp. v. Burnet, 61 App.D.C. 78, 57 F.2d 444; Bakers' Mutual Cooperative Ass'n v. Commissioner, 3 Cir., 117 F.2d 27.

[4] Cf. Commissioner v. Horseshoe Lease Syndicate, 5 Cir., 110 F.2d 748.

[5] South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239.

taxpayer until paid in full. They entitled the holder to receive payments aggregating the principal amount of the Certificate with fixed interest out of the funds of the trust.

The Class B Certificates, conversely, were designated "Liquidation Rights Certificates," and certified only that the holders thereof were entitled to liquidation rights of the trust redeemable by payments as and when authorized, for a total sum of $160 plus interest on each right, after the Class A Certificates had been paid in full. These Certificates were exchanged not to creditors, but to those who owned the beneficial interest in Prairie Lands Trust, Ltd., as shareholders seeking to profit from the operation of the enterprise. The face of the Certificate did not create a fixed obligation to pay a sum certain on a definite date, but only established a maximum redemption value with the fact of payment and the time of payment contingent and uncertain. These Certificates were given preference over the third class, namely, the holders of the beneficial interest in the taxpayer; their status and interests were not materially changed under the plan of reorganization.

In summary, the Class B Certificates possessed these characteristics: They were called "Liquidation Rights Certificates" which terminology usually suggests a proprietary interest. They supplanted shares representing the beneficial interest in the enterprise. They did not provide for the payment of a fixed sum within a definite time or upon demand, which is a normal attribute of an indebtedness.[6] but the incurrence of any liability whatsoever under the Certificate was conditioned upon the uncertainty that assets might remain after payment of the Class A Certificates. The provision in the Certificate with respect to interest did not refer to the premium paid for the use or detention of money within the statutory concept,[7] for the right did not originate as a debt and no principal obligation to support an interest assessment was ever outstanding prior to the end of 1937.[8]

We agree with the Tax Court that these are not characteristics of an interest-bearing obligation of a debtor to his creditor, but, particularly when viewed in the light of the preferences these Certificates bore over the shares in the beneficial interest of the taxpayer, were more analogous to an anticipatory dividend upon preferred stock. As such, no interest accrued upon the Class B Certificates within the intendment of the statute, and the Commissioner's disallowance of the deduction was proper.

The decision of the Tax Court is affirmed.

---

[6] Cf. Commissioner v. J. N. Bray Co., 5 Cir., 126 F.2d 612; Haffenreffer Brewing Co. v. Commissioner, 1 Cir., 116 F.2d 465; Brown-Rodgers-Dixon Co. v. Commissioner, 4 Cir., 122 F.2d 347.

[7] Deputy v. Dupont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416.

[8] Cf. Equitable Life Assurance Society v. Commissioner, 64 S.Ct. 722.