## POTTSTOWN FINANCE CO., Inc. v. UNITED STATES.

No. 6149.

District Court, E. D. Pennsylvania.

Sept. 3, 1947.

Ballard, Spahr, Andrews & Ingersoll, and Charles S. Jacobs, all of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., and Benjamin H. Pester, Sp. Asst. to the Atty. Gen., for defendant.

GANEY, District Judge.

This is an action by the Pottstown Finance Company, Inc., against the United States of America, for the recovery of income taxes for the calender years 1937, 1938 and 1939, which plaintiff asserts were erroneously collected.

The court makes the following

Findings of Fact:

1. The facts agreed upon by and between the parties and incorporated and set

forth in paragraphs one to twelve, inclusive, of the Stipulation filed in this cause, are found as facts.

2. Pottstown Finance Company, Inc., hereinafter referred to as the plaintiff, is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 213 High Street, Pottstown, Pennsylvania, within the Eastern District of Pennsylvania.

3. The plaintiff was incorporated on February 7, 1937 to take over the assets and continue the business theretofore conducted by Maurice Mosheim and Russell R. Tyson as partners, trading under the name of Pottstown Finance Company.

4. The authorized capital of the plaintiff consists of 4,000 shares of debenture preference stock of a par value of $50 each and 500 shares of common stock of a par value of $100 each. The copy of a debenture preference stock certificate, attached to the Complaint as Exhibit A of Exhibit A is true and correct except that the following provision: "The debenture preference stock shall mature on December 31, 1967, and on that date become due and payable in full at par plus accumulated unpaid interest, provided that at the discretion of the board of directors the said maturity date may be thereafter extended from time to time for periods of not to exceed twenty years each".

stamped upon the face of the said certificate was not a part of the debenture preference stock certificates as issued and outstanding during the years 1937, 1938 and 1939. The said provision was placed upon all debenture preference stock certificates pursuant to a resolution of the Board of Directors dated March 12, 1941, a true and correct copy of which is hereto attached and made a part hereof as Exhibit 1 *.

5. On December 31 of each of the taxable years 1937, 1938 and 1939, there were issued and outstanding shares of debenture preference stock of plaintiff as follows:

December 31, 1937 — $119,600
December 31, 1938 — 122,350
December 31, 1939 — 129,500

6. The plaintiff timely filed its corporate income and declared value excess profits tax returns for the calendar years 1937, 1938 and 1939 with Walter J. Rothensies, then Collector of Internal Revenue for the First Collection District of Pennsylvania.

7. In its income tax and declared value excess profits tax returns for the calendar years of 1937, 1938 and 1939, the plaintiff deducted from gross income, in determining taxable net income, the total amount accrued and paid for the respective years on said issued and outstanding debenture preference stock as follows:

1937 — $7,595.50
1938 — $7,320.20
1939 — $7,666.03

8. On May 23, 1941, the Commissioner of Internal Revenue sent the plaintiff a report of examination of its income tax and declared value excess profits tax returns for the calendar years 1937, 1938 and 1939, wherein it proposed the disallowance of the deduction claimed by the plaintiff for interest accrued on the said debenture preference stock and determined alleged deficiencies in taxes for the respective years, as follows:

| | 1937 | 1938 | 1939 |
|---|---|---|---|
| (a) Income Tax | $723.72 | $938.16 | $ 948.25 |
| (b) Declared value excess profits taxes | — | 42.58 | 462.81 |
| (Total $3,115.52) | $723.72 | $980.74 | $1,411.06 |

9. The plaintiff paid the sum of $3,115.-52 plus interest of $771.89 to Walter J. Rothensies, then Collector of Internal Rev-

---

* "Exhibit No. 1
Excerpt from Minutes of Meeting of Board of Directors of Pottstown Finance Company, Inc. Dated March 12, 1941
'The debenture preference stock shall mature on December 31, 1967 and on that date become due and payable in full at par plus accumulated unpaid interest, provided that at the discretion of the Board of Directors the said maturity date may be thereafter extended from time to time for periods of not to exceed twenty years each.' "

enue for the First Collection District of Pennsylvania, but now no longer in office, as follows:

| | | |
|---|---|---|
| July 9, 1942 — | $ 909.57 |
| July 20, 1942 — | 1173.75 |
| August 6, 1942 — | 1604.09 |
| Total | $3,687.41 |

10. On September 16, 1943 the plaintiff timely filed Treasury Forms No. 843 in accordance with provisions of the applicable Revenue Act or the Internal Revenue Code, claiming refunds of income tax and interest for the year 1937 and income tax and declared value excess profits tax and interest for the years 1938 and 1939, based upon the disallowance by the Commissioner of Internal Revenue of the claimed deductions for interest.

11. On August 2, 1944 the Commissioner of Internal Revenue gave notice to the plaintiff of the rejection of its claims for refund mentioned in Paragraph 10.

12. On July 11, 1946, within two years of said notice of rejection of plaintiff's claims for refund, plaintiff instituted the present suit for refund.

13. At all times material to this proceeding, plaintiff's books of account have been kept on the accrual basis and its income and declared value excess profits tax returns for the years 1937, 1938 and 1939 were prepared in conformity therewith.

14. At the time the plaintiff corporation was formed the equity common stock was issued to the former partners, Maurice Mosheim and Russell R. Tyson, who had turned over the assets of their partnership to the plaintiff.

15. The debenture preference stock was physically issued during the month of April, 1937, it having taken several months from the actual date of incorporation to get all assets transferred to the Company and to arrange for physical issuance of the certificates.

16. By the end of April, 1937, $117,650 in debenture preference stock was issued by the corporation of which about $68,800 was issued to individuals exclusive of banks and the Finance Company of America for pre-existing indebtedness.

17. As has been indicated, prior to the formation of the plaintiff corporation, the business had been operated by a Mr. Mosheim and a Mr. Tyson as a partnership, trading under the name of Pottstown Finance Company since 1925, and engaged in discounting paper for automobile purchases. As the business grew, it became necessary to obtain additional capital which was borrowed from individuals, local banks and the Finance Company of America, the result of the foregoing, producing a widely varied interest rate. The debenture preference stock issue, was thus devised in order to relieve the great credit strain on the banks which permitted it to continue in business, the only other alternative being its absorption by the banks and the Finance Company of America.

18. The debenture preference stock certificates originally issued were outstanding during the taxable years in question and were silent as to maturity date, although since the incorporation of the Company, over $32,400 of principal had been paid to holders of the debenture stock upon their request, this being of grace not of right.

19. The holders of the debenture preference stock certificate shared in the profits of the corporation at the discretion of the Board of Directors, after dividends on the common stock had been paid in an amount equal to 6% annually of the par value thereof.

20. Upon dissolution or insolvency of the corporation the rights of the certificate holders were subordinate and inferior to those of unsecured creditors.

21. Although some 50% of the debenture preference stock issued was given to secure prior existing indebtedness, it was not the intent of the issue that the proceeds of the same were to pay for the existing indebtedness.

### Conclusions of Law.

1. The court has jurisdiction over the subject matter of the action and over the parties.

2. The debenture preference stock which the plaintiff issued upon its incorporation in 1937 was corporate stock within the meaning of Section 23(b) of the Revenue Act of 1936, Section 23(b) of the Revenue Act of

1938, and Section 23(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(b).

■ 3. The plaintiff failed by competent and credible evidence to prove that the debenture preference stock issued upon its incorporation was issued to secure prior existing indebtedness.

4. The amounts accrued and paid on the outstanding debenture preference stock in 1937, 1938 and 1939 were dividends, and were not deductible from the taxpayer's income under the provisions of Sections of the Revenue Code above quoted.

5. The additional taxes assessed and collected from the plaintiff were lawfully assessed and collected.

6. The defendant on all of the evidence in this case is entitled to judgment dismissing the complaint at the plaintiff's costs.

### Discussion:

The taxpayer here attempted to persuade the court that the amounts paid on the debenture preference stock for the years 1937, 1938 and 1939 were interest payments and hence deductible, and not dividends, by reason of the fact that the stock issued immediately after incorporation was for the purpose of paying off the prior indebtedness of the partnership which had accrued to the corporation. To substantiate this contention the plaintiff taxpayer called two witnesses, Tyson and Fagley, both of whom failed to corroborate this contention, and the third witness, Gottshall, flatly stated it was not the intent of the debenture preference stock issue to pay off the existing indebtedness of the company. As contended by counsel for the defendant, if it was held that where fifty per cent of the stock issued by a company was issued to prior creditors and that the payments thereon were to be recorded as interest rather than dividend, there would be permitted an easy method of tax evasion by issuing some stock for indebtedness and selling the balance for cash, thus posing an incongruous situation. Further, any one to whom debenture stock was issued was required to fill out a subscription agreement, the conditions of which were identical wtih those on the stock certificate and there was nothing in the subscription which referred to prior indebtedness.

■ The determination of whether the 6% so-called interests provided for in the debenture stock certificate is interest or dividends is a question of fact. John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278. Whether the facts found establish a creditor-debtor relationship is a question of law for the court. United States v. Title Guarantee & Trust Co., 6 Cir., 133 F.2d 990.

■ In this Circuit, the court has laid down in John Wanamaker Philadelphia v. Commissioner, 3 Cir., 139 F.2d 644, 647, certain criteria which are to be the guide for the court to follow. " * * * a fixed or determinable maturity date at which time the holders may legally enforce payment of the principal and accumulated dividends if the corporation is in default; a fixed rate of interest payable even in the absence of profits; the right in the event of dissolution or liquidation to share in the assets before stockholders".

In an earlier case, Bakers' Mutual Coop. Ass'n v. Commissioner, 117 F.2d 27, at page 29, the court of this Circuit emphasized another element: "It is not even true that these certificate holders were limited to 6 per cent upon their money. Profits in addition to this 6 per cent, after provision for reserves, etc., were distributed in proportion to the amount of their purchases. In other words, the greater profits went to those who, by doing business with the Association, had helped build up the fund".

An analysis of the rights, privileges and limitations of the debenture preference stock, as evidenced by the stock certificates, in relation to the factors laid down by the Third Circuit Court of Appeals, persuades one that in the instant case several essential factors are lacking, (1) the stock had no fixed or determinable maturity date at which time the holders could legally enforce payment of the principal, and while payments were made to shareholders they were of grace not of right; (2) although the stock certificates provided that the six per cent so-called interest is payable even in the absence of profits, by reason of the discretion given to the Board of Directors, the debenture preference stock shared additionally after the 6% requirement of the common stock had been made, indicating obvi-

ously that the certificate holders are not limited to 6% on their money, but may share in the profits of the corporation (3) upon dissolution or liquidation the certificate holders are not on a par with unsecured creditors.

Accordingly, the taxpayer's claim for refund is denied and judgment is entered for the defendant.