**BURTON et al. v. BOWERS.**

**Civ. A. 1725.**

District Court, E. D. South Carolina, Charleston Division.

Sept. 2, 1948.

Charles W. Waring, Huger Sinkler, and Albert Simons, Jr., all of Charleston, S. C., for plaintiffs.

Ben Scott. Whaley, U. S. Atty., Louis M. Shimel, Asst. U. S. Atty., both of Charleston, S. C., and Benjamin H. Pester, Sp. Asst. to Atty. Gen., for defendant.

WYCHE, District Judge.

This action was brought by the plaintiffs Maurice C. Burton and H. L. Erckmann,

Trustees in Liquidation of E. P. Burton Lumber Company, against the Collector of Internal Revenue for the State of South Carolina, to recover sums aggregating Seventeen Thousand, Six Hundred Sixty-three and 05/100 ($17,663.05) Dollars, together with interest, paid as additional income taxes assessed by the Commissioner of Internal Revenue for the years 1941, 1942 and 1943.

The complaint alleges, under the first cause of action, that for the plaintiffs' fiscal year ending September 30, 1941, the Collector unlawfully and illegally required the plaintiffs to file a return as though they were a corporation; that he refused to permit them to claim as a deduction Nineteen Thousand, Seven Hundred, Forty-six and 45/100 ($19,746.45) Dollars paid as interest; and further that he calculated a tax upon the entire profits received by the plaintiffs from the sale of property during that fiscal year instead of upon fifty (50%) per cent. thereof as upon a long-term capital gain. The amount involved is Four Thousand, Four Hundred, Fifty-two and 87/100 ($4,452.87) Dollars, and interest.

The second cause of action is similar to the first cause of action except that it covers plaintiffs' fiscal year ending September 30, 1942, and the amount involved is Twelve Thousand, Nine Hundred, Ninety-eight and 75/100 ($12,998.75) Dollars, and interest.

The third cause of action is similar to the first cause of action except that it covers plaintiffs' fiscal year ending September 30, 1943, and the amount involved is Two Hundred, Eleven and 43/100 ($211.43) Dollars, and interest.

The complaint further alleges that the plaintiffs filed their claim with the defendant seeking a refund of the sums alleged to be illegally collected from them for the following reasons: (1) That the Collector computed the tax he determined to be payable as though the taxpayer was a corporation instead of a fiduciary; (2) That the Collector determined sums paid as interest to former holders of the preferred stock of E. P. Burton Lumber Company were payments of dividends on stock; and (3) That the Collector calculated the tax upon the entire amount received from the sale of assets instead of upon fifty per cent. thereof as a long-term capital gain.

It appears that E. P. Burton Lumber Company was incorporated under the laws of South Carolina on December 1, 1904, and that its charter was amended in 1913 by increasing the authorized amount of its capital stock and providing for the issuance of preferred stock.

The certificates contain the following provisions: First Preferred Stock: Eight Hundred Thousand ($800,000.00) Dollars, shall be entitled to a preference in the assets and property of the Company on its liquidation, up to its full face value, and all unpaid dividends and all interest due thereon *over both the Second Preferred and Common Stock,* and shall also be entitled to a cumulative dividend at the rate of six (6%) per cent per annum, payable semi-annually, with interest to be compounded annually at the same rate, out of the net earnings of the Company, before the payment of any dividends on either the Second Preferred Stock or Common Stock of the Company; such dividends on the said First Preferred Stock to accrue from the first day of October, 1913, and the first of such dividends to be payable on May 15th, 1914, and every six months thereafter, and must be paid in full or in part *as may be earned.* (Emphasis added.)

In case the net earnings of the Company be insufficient in any year to pay the dividends thereon, either in whole or in part, as herein provided, the balance so remaining unpaid shall be cumulative and be a charge upon the profits and proceeds of all property of this Company, until the full dividends are paid with compound interest, the right being reserved to the Company to retire, on the first day of October or April of any year, the entire issue of said First Preferred Stock or any part or parts thereof, upon the payment to the holders of such stock, its full face value, together with accumulated dividends thereon to the date of such payment with compound interest as herein specified, said retirement to be made in accordance with

the provisions of the By-Laws of this Company.

The principal business of the corporation was that of manufacturing and selling lumber and lumber products and during 1923 the lumber mill was destroyed by fire. In 1924 the Corporation sold the major portion of its assets consisting of large tracts of timber and by June 21st of that year, all creditors of the Corporation had been paid. The Corporation was dissolved on December 19, 1927. For the years intervening between 1927 and 1941, the Corporation filed the usual corporation returns and there is no dispute as to the fact that the Corporation had no taxable income during those years. The dispute arose as to the years 1941, 1942 and 1943. For those three years, the plaintiffs filed fiduciary returns instead of corporation returns. They reported a net income for the fiscal year ending September 30, 1941, of Thirteen Thousand, Seven Hundred, Twenty-two and 19/100 ($13,-722.19) Dollars, claiming as a deduction Nineteen Thousand, Seven Hundred, Forty-six and 45/100 ($19,746.45) Dollars, as "partial settlement on interest due". A gain of Twenty-one Thousand, Eight Hundred, Eighty-nine and 68/100 ($21,889.68) Dollars, derived from the sale of real estate was reported by the taxpayers as a long-term capital gain at only one-half of the gain. For the fiscal year ending September 30, 1942, the plaintiffs reported a net income of Eighteen Thousand, Eight Hundred, Twenty-one and 29/100 ($18,-821.29) Dollars, claiming as a deduction Fifty-Three Thousand, Nine Hundred, Forty-six and 75/100 ($53,946.75) Dollars, paid as "partial payment of interest due on claims". The Corporation had a net gain of Thirty-five Thousand, One Hundred, Ninety-six and 96/100 ($35,196.96) Dollars, derived from the sale of land and reported one-half of this as a long-term capital gain. For the fiscal year ending September 30, 1943, the plaintiffs reported a net income of One Thousand, Eight Hundred, Seventy-five ($1,875.00) Dollars, being one-half of the capital gain of Three Thousand, Seven Hundred, Fifty ($3,750.-00) Dollars, derived from the sale of land, this gain being reported as a long-term capital gain.

Upon a review of the tax returns, the Commissioner of Internal Revenue denied the deductions claimed as interest on the ground that they were payments of dividends on preferred stock and not interest on indebtedness, and taxed the gains from the sale of the real estate as net capital gains of a corporation on the sale of capital assets rather than fifty per cent. of long-term capital gain provided for taxpayers other than corporations. The deductions for "partial payment of interest due on claims" consisted of payments made to the Preferred Stockholders in liquidation of their preferred stock.

The questions that arise in this case are, first, whether the payments made to the holders of the First Preferred Stock were payments of interest or dividends, and, second, whether the gains on the sales of the assets of the Corporation were taxable as ordinary gains or long-term capital gains.

I am of the opinion that the amounts received by the Preferred Stockholders cannot be considered as interest paid on an outstanding indebtedness of the company, which may be deducted under the provisions of the Revenue Act. 26 U.S.C.A.Int.Rev.Code, § 23(b). In the case of Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, 974, the Court said: "While no comprehensive rule may be laid down for distinguishing in all cases between an investment in a corporation and a loan to it, one of the most important considerations is whether the right to share in the assets of the corporation in case of dissolution is subject to the rights of creditors. If subject to such right, there is a strong presumption that the interest in question is that of a stockholder."

See also, Dayton & Michigan R. Co. v. Commissioner of Internal Revenue, 4 Cir., 112 F.2d 627; John Wanamaker Philadelphia v. Com'r of Internal Revenue, 3 Cir., 139 F.2d 644.

In the case of May Hosiery Mills v. Commissioner of Internal Revenue, 4 Cir., 123 F.2d 858, 860, the Court said: "The preference stock that was purchased cannot be considered a debt in the plain meaning of the statute permitting a credit for money paid out or set aside, 'for the

discharge of a debt.' The preference shares were typical cumulative preference shares, entitled to voting rights under certain contingencies; these shares had no stated maturity and no right to dividends except out of profits, and had no preference over debts of the petitioner. They were evidences of capital investment, and not in any sense debts. Warren v. King, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769; United States v. South Georgia Railway Co., 5 Cir., 107 F.2d 3; Commissioner v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611; Bakers' Mutual Coop. Ass'n v. Commissioner, 3 Cir., 117 F.2d 27."

█ The Preferred Stock Certificates on which the payments were made provided that the holders thereof shall be entitled to a preference in the assets and profits of the Corporation to their full face value and all unpaid dividends and all interest thereon over the Second Preferred and Common Stock. It gave the Preferred Stockholders no preference over creditors. Dividends were payable only out of the earnings of the company. The Corporation recognized that limited preference, and when it sold the major portion of its assets, it paid the creditors in full and then started paying on the Preferred Stock. Nor was there any due or maturity date fixed for the payment of the principal. In the case of Brown-Rogers-Dixson Co. v. Commissioner of Internal Revenue, 4 Cir., 122 F.2d 347, 350, the Court said: "It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due."

█ I am also of the opinion that the gains of the sale of the assets of the corporation were taxable in full as ordinary gains and not as long-term capital gains.

Section 4281 of the 1922 South Carolina Civil Code (1932 and 1942 Codes, Section 7709) provides as follows: "Continuance of corporations for closing affairs after expiration, annulment, etc., of charter.— All corporations, whether they expire by their own limitation or be annulled by the Legislature, or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

Under the provisions of Section 4282 of the 1922 South Carolina Civil Code (1932 and 1942 Codes, Section 7710), the Directors of the Corporation became its Trustees with full power to settle its affairs, collect its outstanding debts, sell and convey its property and divide the moneys and other property among its stockholders after the payment of its debts, and to meet and act under the By-laws of the Corporation and under regulations to be made by a majority of the Trustees, to prescribe the terms and conditions of the sale of its property, to sell all or any part of it for cash or partly on credit or take mortgages and bonds for part of the purchase price for all or any part of its profit.

Under the provisions of Section 4283 of the 1922 South Carolina Civil Code (1932 and 1942 Codes, Section 7711), the Trustees have the authority to sue for and recover the debts and property "by the name of the corporation".

Article 19.22(a) 21 of Treasury Regulation 111 provides as follows: "Gross income of corporation in liquidation.—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See section 282 and articles 1293 and 1294.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution, however they may have appreciated or depreciated in value since their acquisition." The provisions of this Regulation have been incorporated in the Regulations of all of the Internal Revenue Acts since the Act of 1918, and have been given effect by the Courts. Hellebush v. Commissioner of Internal Revenue, 6 Cir., 65 F.2d 902;

First Nat. Bank of Greeley, Colo. v. United States, 10 Cir., 86 F.2d 938.

It appears, therefore, that under the provisions of the South Carolina Statutes and Treasury Regulation hereinabove referred to, it was incumbent on the Corporation, through its liquidating Trustees, to file a corporation return, and that inasmuch as under the Internal Revenue law long-term capital gains are not applicable to corporations, the defendant properly calculated the tax on the entire gains. During the fourteen years intervening between the time of dissolution and the year 1941 when no gains were made by the Corporation, plaintiffs filed corporation and not fiduciary returns.

I conclude, therefore, that the claims of the plaintiffs were properly disallowed and that the suit should be dismissed. Appropriate findings of fact, conclusions of law, and an Order will be filed herewith.